TERRY, Appellant, v. KOLSKI, Respondent.

*No. 75–249. Argued March 2, 1977.—Decided June 14, 1977.*
(Also reported in 254 N.W.2d 704.)

476

For the appellant there was a brief and oral argument by *Patricia D. McMahon,* Milwaukee Legal Services, Inc.

For the respondent the cause was argued by *Gerard Paradowski,* assistant corporation counsel, with whom on the brief was *Robert P. Russell,* corporation counsel.

HEFFERNAN, J.   This appeal raises the question of whether courts of the State of Wisconsin have jurisdiction to hear and decide a cause of action based upon the Federal Civil Rights Act, 42 U.S.C. sec. 1983. We conclude that Wisconsin courts have such jurisdiction; and, accordingly, we reverse the order of the circuit court which affirmed the dismissal of the plaintiff's complaint and direct that the cause be remanded to the county court for the exercise of jurisdiction.

The plaintiff, Louis E. Terry, brought a small claims action in the County Court of Milwaukee county against Milwaukee County Deputy Sheriff Ron Kolski. He claimed that Kolski and others, during an inspection of the cells in the Milwaukee County Jail, where Terry was confined, seized and destroyed plaintiff's personal property, copies of *Oui* and of *Playboy* magazines. In his complaint, Terry alleged that the acts were performed under the color of state law and deprived him of his First Amendment rights under the federal constitution. He asked for damages in the amount of $500, the monetary limit for small claims actions brought in the State of Wisconsin. Sec. 299.01 (4), Stats. 1973.

The county court judge returned the complaint to the plaintiff on the grounds that it did not state a cause of action cognizable under state law.

On appeal to the circuit court, the county court's dismissal was affirmed. The circuit court judge correctly saw the proposed cause of action as an attempt to invoke the jurisdiction of the Wisconsin courts under 42 U.S.C. sec. 1983, the Civil Rights Act. The circuit court concluded that sec. 1983 afforded a federal right, which could be vindicated only by a federal remedy in the federal courts.

Upon rehearing in the circuit court, the judge reaffirmed his dismissal, but modified his original position by concluding that a sec. 1983 action would be cognizable in a state court only where it was pendent to a state action. Because this was an independent action based solely on sec. 1983, he held that the courts of Wisconsin were without jurisdiction. In addition, he held that, in no event, whether the federal civil rights claim were pendent or independent of a cognizable state claim, would the small claims court have jurisdiction.

The plaintiff appeals from the order which affirmed the county court's dismissal of the complaint. All parties

to this appeal agree that the complaint purports to state
a cause of action based on 42 U.S.C. sec. 1983.

The defendant Kolski, represented by the corporation
counsel of Milwaukee county, now specifically concedes
on appeal that circuit courts of the State of Wisconsin
have concurrent jurisdiction with federal district courts
of an action brought under 42 U.S.C. sec. 1983, but he
contends, irrespective of whether there is concurrent
jurisdiction in a state court system generally, the claim
is not within the small claims jurisdiction of the county
court, where Terry brought his action.

Under ordinary circumstances, this concession by
counsel would be dispositive of the claim, for we see no
merit in the contention that the pertinent "jurisdiction"[1]
of the small claims court, other than in respect to the
monetary limit on small claims procedure, differs from
that of the circuit court. The order and the decision of
the circuit judge was, however, based upon a broader
concept—that the jurisdiction of an independent action
based on sec. 1983 is exclusively vested in the federal
court system—and it is this order which has been
appealed.

Because the order of the circuit court poses an im-
portant question of public policy and of the jurisdiction
of state courts, we decline to dispose of the case on the
concession of Kolski's counsel. Moreover, a minority of
this court asserts that sec. 1983 affords only a federal
remedy, to be pursued exclusively in the federal courts.

---

[1] Although we use the term, "jurisdiction," sec. 299.03, Stats.,
makes clear that the limit imposed on small claims actions is in
reference only to the use of expedited and summary procedure for
small claims. It is irrelevant to the subject matter jurisdiction
of the court.

The underlying question is, therefore, whether the courts of the State of Wisconsin have concurrent jurisdiction with the federal courts to hear and decide a question based upon a cause of action created by 42 U.S.C. sec. 1983.

For the resolution of this question, two considerations are pertinent: The nature of our federal system of government and the determination of whether the Congress by statute vested exclusive jurisdiction of sec. 1983 actions in the federal courts.

State judges, like judges of the United States, take an oath to support the Constitution of the United States. Article VI, paragraph 2, of the United States Constitution, provides in part:

"This constitution and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding."

This constitutional provision not only permits state courts to exercise jurisdiction in enforcement of federal laws, to the extent permitted by Congress, but mandates that federal causes of action and federal rights, unless exclusively reserved to the federal courts, must be enforced by state courts. In *The Federalist Papers No. 82*, Hamilton wrote:

"[T]he national and State systems are to be regarded as One Whole. The courts of the latter will of course be natural auxiliaries to the execution of the laws of the Union, and an appeal from them will as naturally lie to that tribunal which is destined to unite and assimilate the principles of national justice and the rules of national decisions." Beard, *The Enduring Federalist*, at 355.

*Charles Dowd Box Co., Inc. v. Courtney,* 368 U.S. 502, 507–08 (1962), pointed out that:

"We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule."

Sec. 262.04, Stats., now sec. 801.04(1), describes the jurisdictional requirements for judgments against persons, status, and things in respect to all courts of the State of Wisconsin. It states in part:

"Jurisdiction of the subject matter is conferred by the constitution and statutes of this state and by *statutes of the United States* . . . ." (Emphasis supplied.)

In *Vogt v. Nelson,* 69 Wis.2d 125, 127–28, 230 N.W.2d 123 (1975), this court stated:

"The original jurisdiction of the circuit court includes the power to hear and determine all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court.[4] State courts are bound to entertain actions to enforce liabilities created by federal law unless prohibited by an act of Congress.[5]

"[4] Sec. 252.03, Stats.
"[5] *Claflin v. Houseman* (1876), 93 U.S. 130, 23 L. Ed. 833."

In *Kaski v. First Federal Savings & Loan Association of Madison,* 72 Wis.2d 132, 142, 240 N.W.2d 367 (1976), we said, referring to *Charles Dowd Box Co., supra:*

"We have followed that position in the courts of this state and have held generally that, when there is no express provision excluding jurisdiction or when there is no incompatability in allowing concurrent jurisdiction, the courts of Wisconsin will exercise subject-matter jurisdiction and apply the federal law."

In *Kaski*, we cited, at page 142, numerous Wisconsin cases in which this court exercised subject matter jurisdiction and applied the federal law.

This court, therefore, has uniformly followed the reasoning that state courts have a constitutional duty to enforce federal substantive rights in the state forum. The uniform holdings of this court are consistent with the mandates of the United States Supreme Court in this respect.

The United States Supreme Court's position was recapitulated in *Testa v. Katt*, 330 U.S. 386, 390 (1947). Therein it referred to *Claflin v. Houseman, supra*. In reference to *Claflin*, it stated:

"It repudiated the assumption that federal laws can be considered by the states as though they were laws emanating from a foreign sovereign. Its teaching is that the Constitution and the laws passed pursuant to it are the supreme laws of the land, binding alike upon states, courts, and the people, 'any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' It asserted that the obligation of states to enforce these federal laws is not lessened by reason of the form in which they are cast or the remedy which they provide. And the Court stated that 'If an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a State court.'" (at 390–91)

The ordinary rule, therefore, mandated upon the states is that they and their courts shall enforce the laws of Congress. Only if the Congress has exclusively reserved jurisdiction to the federal courts are state courts without power to act.

The American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts* (1969),

at 478, lists classes of cases in which suit can only be brought in a federal court and in respect to which litigants have no alternate choice of a state forum. The classes of cases listed are few in number and do not include cases which are brought to vindicate federal civil rights. While the listing does not on its face purport to be exhaustive, it is significant that sec. 1983 actions referred to elsewhere in the *Study* do not appear in the classification of cases that can be brought only in a federal forum.

The question of whether state courts have jurisdiction is, however, not a matter to be resolved by resort to authority—although existing authority is persuasive that state courts have such jurisdiction—but rather by resort to the federal statutes themselves. The two statutes pertinent to our consideration are 42 U.S.C. sec. 1983 and 28 U.S.C. sec. 1343 (3) :

"42 U.S.C. 1983. Civil action for deprivation of rights
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
"28 U.S.C. 1343. Civil rights and elective franchise
"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
" . . .
"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

It is apparent from the face of these statutes, as they now appear, that no exclusivity of jurisdiction is vested in the federal courts. The fact that sec. 1343 (3) provides that district courts shall have "original jurisdiction" is not to be equated with exclusive jurisdiction. It, in fact, is a statement of congressional intent that exclusive jurisdiction was not intended. *See,* Note, *Limiting the Section 1983 Action in the Wake of Monroe v. Pape,* 82 Harv. L. Rev. 1468, 1498, n. 62; Aldisert, *Section 1983, Comity and the Federal Caseload,* Law and the Social Order, 1973, p. 557, 576; *Bors v. Preston,* 111 U.S. 252 (1884) ; *Brown v. Pitchess,* 119 Cal. Rptr. 204, 531 P.2d 772 (1975).

*Monroe v. Pape,* 365 U.S. 167 (1961), heavily relied upon by the dissenters herein, points out that 42 U.S.C. sec. 1983 is a verbatim codification of R.S. sec. 1979. We therefore explore the legislative genesis of R.S. sec. 1979. R.S. sec. 1979—now 42 U.S.C. sec. 1983—relied upon by the United States Supreme Court in *Monroe v. Pape, supra,* has no provision for federal exclusivity. Because, however, the dissent hereto construes the legislative history of the Civil Rights Act to presently provide for exclusive jurisdiction in the federal courts and asserts that the act of 1866 remains in full force and effect in respect to jurisdiction, we address ourselves to the legislative history of R.S. sec. 1979 and its verbatim counterpart, sec. 1983.

We are satisfied that the provision of the federal law now appearing in the United States Code as 42 U.S.C. sec. 1983 is Revised Statute sec. 1979, affirmatively enacted by the codification of 1874. The statute now codified as 42 U.S.C. sec. 1983 indeed had its origin in the laws of the United States as a portion of the Civil Rights Act passed on April 9, 1866, as 14 Stats. 27. Sec. 2 of that act provided:

"Sec. 2. And be it further enacted, That any person who, under color of any law, statute, ordinance, regulation, or custom, shall subject, or cause to be subjected, any inhabitant of any State or Territory to the deprivation of any right secured or protected by this act, or to different punishment, pains, or penalties on account of such person having at any time been held in a condition of slavery or involuntary servitude . . . shall be deemed guilty of a misdemeanor. . . ."

Section 3 of that act vested jurisdiction exclusively in the federal district courts. That section provided:

"Sec. 3. And be it further enacted, That the district courts of the United States, within their respective districts, shall have, exclusively of the courts of the several States, cognizance of all crimes and offences committed against the provisions of this act . . . ."

The revision that occurred on May 31, 1870, 16 Stats. 140, in respect to voting, retained exclusive jurisdiction in the federal courts.

The next revision of the statute by act of Congress on April 20, 1871, 17 Stats. 13, withdrew the language which provided that the district courts, "exclusive of the courts of the several states," were to have cognizance of offenses committed against the act. That 1871 revision provided instead:

". . . such proceeding to be prosecuted in the several district or circuit courts of the United States, with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts. . . ."

By 1874 the Congress, realizing the confusion resultant from attempting to determine the statutory law on the basis of original enactments that were constantly subject to revision, attempted the first revised and codified statement of the laws of the United States.

2 Sutherland, *Statutory Construction,* sec. 36.19, at 79–80, explains the codification process of 1874 and its effect:

"The growing bulk of the Statutes at Large and their total lack of organization by subject matter made the ready discovery of federal law an almost impossible task. In an endeavor to present an orderly code which would eliminate the repealed, obsolete, and modified provisions of the statutes, Congress enacted by the Act of June 22, 1874, 'The Revised Statutes of the United States.' . . . The Revised Statutes were declared to be legal evidence and to *repeal* any public act passed prior to December 1, 1873, subject to the proviso that 'all acts of Congress passed prior to said last named day *no part of which are embraced in said revision,* shall not be affected or changed by its enactment.' " (Emphasis supplied.)

That 1874 revision specifically and affirmatively enacted sec. 1979. Section 1979 as enacted is in identical form with 42 U.S.C. sec. 1983 as it presently appears. It should again be noted that it was the revision of 1874 which the United States Supreme Court relied upon in the case of *Monroe v. Pape.* It is beyond doubt that R.S. sec. 1979, which clearly embraced the civil rights acts passed prior to December 1, 1873, constituted a repealer of those prior acts which provided for exclusive jurisdiction in the federal courts.

The legislative history of the prior civil rights acts of 1866, 1870, and 1871, while of great importance in terms of the conditions then existent that they sought to remedy,[2] are irrelevant to the question now before this court—the jurisdiction of state courts to hear and decide

---

[2] See *District of Columbia v. Carter,* 409 U.S. 418 (1973), in which Justice Brennan, writing for the court, explained the origins of the Civil Rights Act of 1871, popularly known as the Ku Klux Klan Act:

"Although there are threads of many thoughts running through the debates of the 1871 Act, it seems clear that sec. 1 of the Act,

actions brought under 42 U.S.C. sec. 1983. It is the 1874 revision, identical in verbiage with the code provision of 42 U.S.C. sec. 1983, that is now controlling.

Simultaneously with the passage of R.S. sec. 1979, the revised statutes enacted secs. 563 and 629, which are specifically applicable to the jurisdictional question before this court.

Sec. 563 provided:

"The district courts shall have jurisdiction as follows:
"  .  .  .
"Eleventh. Of all suits authorized by law to be brought by any person for the recovery of damages on account of any injury to his person or property, or of the deprivation of any right or privilege of a citizen of the United States by any act done in furtherance of any conspiracy mentioned in section nineteen hundred and eighty-five, Title, 'CIVIL RIGHTS.' "

Further, that revision provided:

"Sec. 629. The circuit courts shall have original jurisdiction as follows:
"  .  .  .
"Sixteenth. Of all suits authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or

---

with which we are here concerned, was designed primarily in response to the unwillingness or inability of the state governments to enforce their own laws against those violating the civil rights of others. Thus, while the Klan itself provided the principal catalyst for the legislation, the remedy created in sec. 1 'was not a remedy against [the Klan] or its members but against those who representing a State in some capacity were *unable* or *unwilling* to enforce a state law.' *Monroe v. Pape*, 365 U.S., at 175–176 (emphasis in original)." (at 426)

Although the right sought to be enforced by sec. 1983 actions is a federal right, adherence to the position of the minority herein would ratify adherence to the very evil the civil rights acts were designed to obviate—the refusal of state courts and officers to vindicate civil rights afforded by the Constitution of the United States.

usage of any State, of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States."

We accordingly conclude that the statutes relied upon by the dissenters which purport to give exclusive jurisdiction to federal courts in respect to the Civil Rights Act were repealed and recreated by the affirmative action of Congress when it enacted Title XIII, secs. 563 and 629, and Title XXIV, sec. 1979, Laws of 1874.

The minority is in error when it asserts that R.S. sec. 1979 has not been enacted into positive law. It is true that 42 U.S.C. sec. 1983 *per se* has not been enacted into positive law, but the text of that section, which is *prima facie* evidence of the law, constitutes an exact restatement of the affirmatively enacted codification of 1874. There was no "inconsistency arising through omission or otherwise between the provisions of any section of this Code and the corresponding portion of legislation heretofore enacted . . . ." Act of June 30, 1926, 44 Stats., ch. 712, the act that put R.S. sec. 1979 into the United States Code as 42 U.S.C. sec. 1983. Present sec. 1983, as a verbatim restatement of R.S. 1979, accurately states the law of the United States.

As important in the context of the instant case as the history of the statutory revisions that led up to 42 U.S.C. sec. 1983 is the positive enactment of Congress pertaining to the jurisdiction of civil rights actions. Title 28 U.S.C. sec. 1343(3) and (4) was enacted by Act of June 25, 1948, c. 646, sec. 34, 62 Stat. 991. That portion of the code provides:

"1343. Civil rights and elective franchise

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

"...

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

This section, 28 U.S.C. sec. 1343, has been consistently construed as the jurisdictional section applicable to civil rights actions brought under 42 U.S.C. sec. 1983. *Aldinger v. Howard,* 427 U.S. 1 (1976).

It is thus clear that no provision remains in the federal statutes which vests exclusive jurisdiction of sec. 1983 actions in the federal courts.

As pointed out above, original jurisdiction is used in contradistinction to exclusive jurisdiction, and under accepted principles of statutory construction, discussed *supra,* concurrent jurisdiction in the state courts is permitted, indeed compelled.

The dissent's reliance upon *Monroe v. Pape,* 365 U.S. 167 (1961), is misplaced. That case did not deal with the question of whether an action under sec. 1983 could be brought in a state court. Its holding rather concerned itself with the meaning of the phrase, "under color of" state law and whether a municipal corporation was a "person" under the Civil Rights Act.

Additionally—and it is perhaps in this respect that the dissenters' confusion originates—it dealt with the question of whether it was first necessary to exhaust state administrative remedies prior to seeking redress in the federal courts pursuant to sec. 1983. It dealt not at

all with the question of the jurisdiction of state courts in the present context of sec. 1983.

The policy considerations raised in *Monroe v. Pape* by Justice Douglas' opinion should mandate a responsible state court to accept jurisdiction of actions brought pursuant to sec. 1983. The historical background outlined by Justice Douglas pointed out that, at the time of the passage of the original Civil Rights Act and the Ku Klux Klan Act, federal authorities, with good reason, distrusted the ability or willingness of some state courts to vindicate federal rights. If this court, which has concurrent jurisdiction of actions under sec. 1983, refuses to countenance such actions on the spurious ground that it has no jurisdiction, we would place ourselves in the same position as did some southern states during the Reconstruction Era when they refused to recognize federal civil rights in state courts.

No responsible commentator has asserted that civil rights jurisdiction under sec. 1983 is not vested concurrently in state courts. Aldisert, *supra*, at 575–76, states bluntly, ". . . state courts already have section 1983 jurisdiction . . . ."

Among the authorities for that proposition cited by Aldisert are Antieau, *Federal Civil Rights Acts* 49 (1971), " 'Actions can be brought in state courts, . . .' "

Another commentator, Note, *Limiting the Section 1983 Action in the Wake of Monroe v. Pape*, 82 Harv. L. Rev., n. 62, at 1486 (1969), wrote:

"State courts have puzzlingly hesitated on whether they have jurisdiction over sec. 1983 claims as such, and no case has been found in which a state court granted relief under the section. . . .

"The jurisdictional grant keyed to sec. 1983, 28 U.S.C. sec. 1343(3) (1964), gives original but not exclusive jurisdiction to the federal courts. Whenever exclusive jurisdiction is neither granted nor necessarily implied, state courts may exercise concurrent jurisdiction. *See*

Claflin v. Houseman, 93 U.S. 130, 136 (1876). The 1871 statute's implied grant of exclusive jurisdiction to the federal courts, *see* Civil Rights Act of 1871 sec. 1, ch. 22, sec. 1, 17 Stat. 13 ('such proceeding to be prosecuted in the several district or circuit courts of the United States . . . .'), was dropped in the 1873–74 codification, *see* R.S. secs. 563(12), 629(16) (2d ed. 1873–74), in what could not be described as a presumable deletion of 'surplusage,' *cf.* note 16 *supra.* . . .

"Under the supremacy clause of the Constitution, U.S. Const. art. VI, cl. 2, state court judges are bound to obey federal law when applicable. *See* Testa v. Katt, 330 U.S. 386, 393 (1947).

"State courts probably cannot decline jurisdiction over sec. 1983 controversies while hearing other state law cases based on similar or identical events. Such a practice would suggest that a state forum was being denied to federal claims solely because they were federal, an impermissible discrimination against claims based on federal statutes. *Cf.* Missouri *ex rel.* Southern Ry. v. Mayfield, 340 U.S. 1, 4 (1950)."

The recent case of *Aldinger v. Howard,* 427 U.S. 1 (1976), implicity concluded that sec. 1983 claims are cognizable in state courts. Justice Brennan, writing in dissent in respect to the principal issue, agreed with the majority in respect to that implied holding. Justice Brennan stated:

"The Court today appears to decide *sub silentio* a hitherto unresolved question by implying that sec. 1983 claims are not claims exclusively cognizable in federal court but may also be entertained by state courts . . . . This is a conclusion with which I agree." *Aldinger,* n. 17, at 36.

In Miller, Comment, *Aldinger v. Howard and Pendent Jurisdiction,* 77 Colum. L. Rev. 127, the author states, referring to 28 U.S.C. sec. 1343(3), "This provision grants jurisdiction to the federal courts, concurrently with the state courts, for suits brought, *inter alia,* under sec. 1983." (n. 11, at 129).

This same conclusion is implicit in *Sullivan v. Little Hunting Park*, 396 U.S. 229 (1969). The Supreme Court therein noted that an action commenced under 42 U.S.C. sec. 1982 granting to all citizens of the United States the right to inherit, purchase, lease, sell, hold, and convey real estate and personal property—which section had its origin, as did 42 U.S.C. sec. 1983, in the Civil Rights Act of 1866, 14 Stat. 27—could be brought in state court. The Court said:

"We held in *Jones v. Mayer Co.* [392 U.S. 409 (1968)] that although sec. 1982 is couched in declaratory terms and provides no explicit method of enforcement, a federal court has power to fashion an effective equitable remedy. [Citation] That federal remedy for the protection of a federal right is available in the state court, if that court is empowered to grant injunctive relief generally, as is the Virginia court." (at 238)

Because 28 U.S.C. sec. 1343 is the jurisdiction provision for both 42 U.S.C. secs. 1982 and 1983, we cannot but conclude that the Supreme Court in *Sullivan* implicitly acknowledged that any civil rights action may be brought in a state court to vindicate federal rights and to obtain federal remedies.

Only one federal court, a district court in California, has held to the contrary. *Chamberlain v. Brown*, 233 Tenn. 25, 442 S.W.2d 248 (1969), also held that federal jurisdiction was exclusive. It reasoned that, because of passion and prejudice, federal rights might not be protected in a state forum. The overwhelming majority of state courts, however, have, without extensive discussion, found concurrent jurisdiction in the state court systems. *See, Brown v. Pitchess, supra; McClanahan v. Cochise College*, 25 Ariz. App. 13, 540 P.2d 744 (1975); *Silverman v. University of Colorado*, 36 App. Colo. 269, 541 P.2d 93 (1975); *Dudley v. Bell*, 50 Mich. App. 678, 213

N.W.2d 805 (1973) ; *Williams v. Horvath*, 129 Cal. Rptr. 453, 548 P.2d 1125 (1976).

These opinions are consistent with the responsibilities of state courts under our system of federalism. Professor Henry M. Hart, Jr., in *The Relations Between State and Federal Law*, 54 Colum. L. Rev. 489, points out that federal law is created on the assumption that we have responsible state courts which will act affirmatively on matters of federal law. He states:

"The federal statutes are full of references, both explicit and implicit, to the law of some state. As a result, legal problems repeatedly fail to come wrapped up in neat packages marked 'all-federal' or 'all-state.' . . .

"The complexities thus created are greatly enhanced by the circumstance, of enormous significance in American federalism, that state courts are regularly employed for the enforcement of federally-created rights having no necessary connection with state substantive law. . . . The states have no more conspicuous role as agents of the nation than in the judicial enforcement of federal statutes." (at 498)

Henry J. Friendly, in his essay, *Civil Rights Actions— and herein of Abstention, Comity and Exhaustion*, appearing in Federal Jurisdiction: A General View, urges that, in respect to prisoner civil rights cases, there be "a requirement of initial invocation of state judicial remedies." He urges that ". . . states do their job." (at 107)

Judge Ruggero J. Aldisert, in the article, *Judicial Expansion of Federal Jurisdiction: A Federal Judge's Thoughts on Section 1983, Comity and the Federal Caseload*, 1973 Law and The Social Order 557, decries the rush to the federal courts for the adjudication of sec. 1983 cases. He points out that the doctrine of *Monroe v. Pape*, which obviates the necessity of the exhaustion of administrative remedies within the states, particularly where state prisoner rights are concerned, has resulted in

an overwhelming and crushing avalanche of cases in the federal courts. As a state court, we are not obliged to be unduly sympathetic with this plight of our federal brethren, because the situation results from the holding of the United States Supreme Court in *Monroe v. Pape, supra*. Judge Aldisert's article points out that the states have avoided their responsibility in respect to civil rights cases under sec. 1983, although they clearly have jurisdiction to proceed. Aldisert writes:

"Litigants' unabashed recourse to the fourteenth amendment to question essentially political decisions is moving state executives and state legislatures away from their sworn responsibilities to uphold the Federal Constitution. State officers have as great a responsibility to do this as do federal judges. Yet a good case can be made that many state officials are 'copping out,' ducking the hard questions themselves, and relying on the federal judiciary to make tough, unpopular decisions." (at 561–62)

Aldisert makes it clear that state courts, as well as state legislatures and executives have "copped out" on the responsibility in respect to sec. 1983 cases. It is apparent that sec. 1983 cases dealing with prisoner civil rights actions in particular should be of a special concern to a state court.

Judge Friendly, in his essay, *Civil Rights Actions, supra,* at 105, points out:

"The state, which has special concern with the rehabilitation or incapacitation of persons convicted of violating its penal laws, also has a special responsibility to give them decent treatment and to impose only such restrictions on rights accorded other citizens as are necessary to prevent disorder and escape."

It thus seems clear that courts of this state have jurisdiction to hear and decide sec. 1983 cases. In addition,

they have an affirmative obligation under the Constitution of the United States to take jurisdiction whether or not the federal right asserted is pendent to a state claim. It is appropriate, in light of the interest of the state, as well as the interest of the United States, to take jurisdiction of these cases which are mandatory obligations under the Constitution and the statutes of the United States and the Constitution and laws of Wisconsin.

Although we see the instant case as posing issues of substantial proportion in terms of jurisdiction and First Amendment rights, the case itself is trivial in monetary terms. The prisoner alleges that he was unconstitutionally deprived of the possession of two magazines, *Oui* and *Playboy*. The action was appropriately brought in the small claims court. But what to most people would be a matter of pecuniary insignificance becomes, because of the nature of prison life, a matter of real concern to an inmate. *See, Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts*, Tentative Report of Special Committee, Federal Judicial Center, October 6, 1975.

The county court in which this action was brought was an appropriate forum. As was conceded by Milwaukee county's corporation counsel, and as we have demonstrated from analysis of the relevant federal statutes, the circuit courts of Wisconsin, as courts of general jurisdiction, may entertain sec. 1983 actions. The Constitution of the State of Wisconsin, Art. VII, sec. 8, provides:

"The circuit courts shall have original jurisdiction in all matters civil and criminal within this state, not excepted in this constitution, and not hereafter prohibited by law . . . ."

Art. VII, sec. 2, gives the legislature power to create and confer jurisdiction on inferior courts. The county

court, in a constitutional sense, is so denominated. Pursuant to this constitutional grant, the legislature has vested jurisdiction in the county courts to hear ". . . all other civil actions and special proceedings of all kinds concurrent with the circuit courts . . . ." Sec. 253.11, Stats.

The small claims court is a part of the county court and is created by ch. 299, Stats. In all respects it has the same jurisdiction as the county court generally; but, in respect to claims amounting to $500 or less, an expedited and summary *procedure* is provided. Its subject matter jurisdiction, however, is not limited in any manner pertinent to its authority to entertain a sec. 1983 action (sec. 299.03, Stats.). In a sec. 1983 action brought for the recovery of money damages of $500, the small claims procedures are available.

We accordingly conclude that the county court, using the ch. 299 procedures, had subject matter jurisdiction to consider and decide the claim of Louis E. Terry brought under the cause of action afforded by 42 U.S.C. sec. 1983. The circuit court erred when it affirmed the county court's dismissal of the complaint.

*By the Court.*—Order reversed, and cause remanded to the circuit court, with directions to remand to the county court for further proceedings on the complaint.

ROBERT W. HANSEN, J. *(dissenting)*. In the small claims branch of the county court, plaintiff brings this civil action for damages, alleging deprivation of a constitutional right "under color of law." Such cause of action is authorized by a federal statute.[1] Can such

---

[1] R.S. sec. 1979, 42 U.S.C.A., sec 1983 at 250, providing: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to

action be brought in a state court? The answer is that it can unless Congress, as to the statute involved, has provided for exclusive jurisdiction in the federal court.[2]

While this cause of action for deprivation of rights "under color of law" is set forth in the United States Code,[3] it is necessary to go to the federal statutes establishing such civil cause of action to resolve the issue as to exclusivity of jurisdiction. This cause of action was first established by Congress by statute in 1866,[4] revised in 1870,[5] revised again in 1871,[6] and revised again in 1874.[7] While set forth in the United States Code, it has not been enacted or reenacted as part of the code.[8]

---

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[2] *See: Dowd Box Co. v. Courtney*, 368 U.S. 502, 507, 508 (1962), the high court holding: "We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created by federal law. Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule." *See also: Vogt v. Nelson*, 69 Wis.2d 125, 128, 230 N.W.2d 123 (1975), this court holding: "State courts are bound to entertain actions to enforce liabilities created by federal law unless prohibited by an act of Congress."

[3] 42 U.S.C.A., sec. 1983.

[4] Act of April 9, 1866, 14 Stat. 27.

[5] Act of May 31, 1870, 16 Stat. 140.

[6] Act of April 20, 1871, 17 Stat. 13.

[7] R.S. sec. 1979, Laws of 1874, Title XXIV.

[8] *See: Uniform System of Citations*, sec. 12:3:1(d) (12th ed. 1976), page 54, stating: "U.S.C. does not always accurately reprint the language of a statute passed by Congress. Some titles of U.S.C., however, have been enacted into positive law. . . . As of January 20, 1974, the titles so enacted were 1, 3–6, 9, 10, 13, 14, 17, 18, 23, 28, 32, 35, 37–39, and 44. For all other titles, the

Thus, where federal statutes are included in the United States Code, but have not been enacted as part of such code, they are only prima facie evidence of the wording of the statutes referred to and the language of the statutes controls.[9] In facing the question of whether the statute now before us gave a right to sue a municipal corporation, the United States Supreme Court went to the statutes—not the code—to determine the intent of Congress and the purpose of such enactments.[10] (The high court held that the statutes involved did not authorize such suit against a municipality.)

Likewise, the United States Supreme Court went to the statutes—not the code—in holding that prior resort to an administrative proceeding before a school superintendent was not a prerequisite to bringing this cause of action in the federal court.[11] Just so, on the question

language of *Statutes at Large* is authoritative. . . ." *See also: Preface,* Supp. V, U.S.C. (1970), page vii, Speaker Carl Albert noting: "This supplement together with the 1970 edition establishes prima facie those laws in effect on January 18, 1976, except that titles 1, 3, 4, 5, 6, 9, 10, 13, 14, 17, 18, 23, 28, 32, 35, 37, 38, 39 and 44, having been enacted into law, establish legal evidence of the law contained in those titles." R.S. sec. 1979, Title XXIV, Laws of 1874, has not been enacted into positive law in the United States Code.

[9] *Uniform System of Citations, supra,* n. 8. We must therefore look to the language of *Statutes at Large* which is authoritative as to this title. *See also: Preface,* U.S.C. (1964 ed.), page ix, Emanuel Celler, Chairman of the H.R. Committee on the Judiciary, stating at page IX: "It is hoped that the program of enacting the entire Code, title by title, to improve its present status as merely prima facie evidence of the law, will meet with early success."

[10] *Monroe v. Pape,* 365 U.S. 167, 171 (1961), the high court noting: "Section 1979 [Laws of 1874] came onto the books as sec. 1 of the Ku Klux Act of April 20, 1871."

[11] *McNeese v. Board of Education,* 373 U.S. 668, 671 (1963), the high court noting: "The cause of action alleged here is pleaded in terms of R.S. §1979, 42 U.S.C. §1983. . . .

of exclusivity of federal court jurisdiction, it is the 100-year-old federal statutes that are to resolve the issue of jurisdiction presented, rather than the reference to them in the code.

The statutes involved in the instant case are these:

*Act of 1866.* This Act of Congress created the civil cause of action for damages for deprivation of rights "under color of law," and specifically provided for the *exclusive* jurisdiction of federal district and circuit courts as to the cause of action created.[12]

*Revised Act of 1870.* This initial revision of the Act of 1866 repeated both the right involved and the *exclusive* jurisdiction of the federal district and circuit courts to try such cause of action.[13]

*Revised Act of 1871.* This revised act, known as the Ku Klux Act,[14] repeated the right to bring this cause of action, providing: ". . . such proceeding *to be prosecuted*

"That is the statute that was involved in *Monroe v. Pape, supra;* and we reviewed its history at length in that case. 365 U.S., at 171 *et seq.*"

[12] Act of April 9, 1866, 14 Stat. 27, sec. 3, specifically providing: "That the district courts of the United States, within their respective districts, shall have, exclusively of the courts of the several States, cognizance of all crimes and offences committed against the provisions of this act, and also, concurrently with the circuit courts of the United States, of all causes, civil and criminal, affecting persons who are denied or cannot enforce in the courts or judicial tribunals of the State or locality where they may be any of the rights secured to them by the first section of this act. . . ."

[13] Act of May 31, 1870, 16 Stat. 140, 144. *See: Monroe v. Pape, supra,* n. 10, Mr. Justice FRANKFURTER, in dissenting opinion, noting: "The 1866 Act had been reenacted substantially and in form, by the 17th and 18th sections of the Act of May 31, 1870, 16 Stat. 140."

[14] *See: Monroe v. Pape, supra,* n. 10, at 171.

in the several district or circuit courts of the United States."[15] [Emphasis supplied.]

*Revised Act of 1874.* This revised act abbreviated the provisions for civil cause of action for deprivation of rights, repeating the right to sue for deprivations "under color of law," with a reference to sec. 563, providing for jurisdiction of federal district courts, and to sec. 629, providing for original jurisdiction of federal circuit courts in certain instances.[16]

When the cause of action which plaintiff here seeks to assert in a state court was originally established in the Act of 1866, it is clear that jurisdiction was limited to the federal courts. It is as clear that exclusive jurisdiction in the federal courts was continued in the first revision, the Act of 1870. In the second revision, the Act of 1871, the substitution of the phrase "to be prosecuted in the several district or circuit courts" does not indicate any congressional intent to replace exclusivity with concurrent jurisdiction.

One state supreme court—California—found to the contrary, holding that the revision of 1871 "expresses an intent to confer *original, not exclusive,* jurisdiction on the federal courts."[17] [Emphasis in original.] But

---

[15] Act of April 20, 1871, 17 Stat. 14. The requirement of proceedings being prosecuted in the federal courts was followed with this provision: ". . . with and subject to the same rights of appeal, review upon error and other remedies provided in like cases in such courts, under the provisions of the act of the ninth of April, eighteen hundred and sixty-six."

[16] R.S. sec. 1979, Act of April 9, 1874, with reference to sec. 563, ch. 3, *District Courts—Jurisdiction,* and sec. 629, Title XIII, *The Judiciary.*

[17] *Brown v. Pitchess,* 119 Cal. Rptr. 204, 531 P.2d 772, 774 (1975), the court, on this point, stating: "The amicus brief of the Attorney General points out that section 1983 as originally enacted provided that proceedings under it were to be prosecuted 'in the several district or circuit courts of the United States.' (Civil Rights Act of 1871, Act of 20 April 1871, §1, 17 Stat. 13.)

that approach reckons without the language in the 1871 revision following the words "to be prosecuted in the several district or circuit courts," to wit: "with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts, under the provisions of the act of the ninth of April, eighteen hundred and sixty-six."[18] The incorporation of the 1871 revision as to "rights of appeal, review upon error, and other remedies" makes sense only if the action is required to be commenced in a federal court.

As to the revision in 1874, we are faced with an abbreviation rather than a change of phraseology. Much is deleted, nothing is added. What is left is a repetition of the right—as stated in the 1866 Act—with no mention of forum, right of appeal or review upon error. By reference to other statutes, jurisdiction to entertain the action remains with the federal courts, with right of appeal or review upon error under federal law in the federal system.

The general rule as to congressional revisions of statutes is that, ". . . it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed."[19] A revised statute is "primarily a codification of the general statutes then in force and is not lightly to be read

However, the language expresses an intent to confer *original, not exclusive*, jurisdiction on the federal courts, there being no general federal-question jurisdiction in the lower federal courts at that time." Cited and followed in: *Backus v. Chilivis*, 236 Ga. 500, 224 S.E.2d 370, 374, n. 1 (1976).

[18] Act of 1871, sec. 1, 17 Stat. 13.

[19] *Anderson v. Pacific Coast S.S. Co.*, 225 U.S. 187, 199 (1912), citing *United States v. Ryder*, 110 U.S. 729, 740 (1884); *United States v. Le Bris*, 121 U.S. 278, 280 (1887); *Logan v. United States*, 144 U.S. 263, 302 (1892); *United States v. Mason*, 218 U.S. 517, 525 (1910).

as making a change."[20] The United States Supreme Court has also held, ". . . upon a revision of statutes, a different interpretation is not to be given to them without some substantial change of phraseology—some change other than what may have been necessary to abbreviate the form of the law."[21]

In the 1874 revision there is no change of phraseology at all. There is no more than an abbreviation, as is often a primary purpose of recodification and revision.[22] Since no change in language or phraseology is involved, the abbreviation of the statute in the 1874 revision is here not sufficient to indicate or establish a congressional intent to change the thrice-repeated insistence on exclusivity of federal court jurisdiction found in the original enactment and two earlier revisions.

Even a change of phraseology in a revision, the United States Supreme Court has held " '. . . will not be regarded as altering the law where it had been well settled by plain language in the statutes, or by judicial construction thereof, unless it is clear that such was the intent.' "[23] That was not the intent of Congress, either in the 1871 or 1874 revisions.

[20] *United States v. Sischo*, 262 U.S. 165, 168, 169 (1923), the United States Supreme Court there holding: "The language under consideration was an insertion in the Revised Statutes. That volume was primarily a codification of the general statutes then in force and is not lightly to be read as making a change, although of course it may do so."

[21] *McDonald v. Hovey*, 110 U.S. 619, 629 (1884).

[22] *See: Preface*, U.S.C. (1964 ed.), page ix, Emanuel Celler, Chairman of the H.R. Committee on the Judiciary, stating: "Inasmuch as many of the general and permanent laws which are required to be incorporated in this Code are inconsistent, redundant, and obsolete, the Committee on the Judiciary is engaged in a comprehensive project of revising and enacting the Code into law, title by title."

[23] *McDonald v. Hovey, supra*, n. 21, at 629, quoting Sedgwick on Construction (2d ed. 229).

We need only go to the United States Supreme Court case of *Monroe v. Pape*,[24] and the legislative history therein set forth to find such lack of intent on the part of Congress to substitute concurrent jurisdiction for exclusive jurisdiction. One state supreme court—Tennessee—has done just that,[25] relying heavily on the *Monroe Case* for its holding that Congress did not intend, and R.S. sec. 1979, Laws of 1874, does not provide for concurrent jurisdiction of state courts as to civil actions brought pursuant to R.S. sec. 1979.[26]

In the *Monroe Case,* the United States Supreme Court quoted extensively from the Congressional Record as to arguments, pro and con, made at the time of the revision of 1871, with speakers terming the revision: " '. . . a civil action for damages against the wrongdoer in the Federal courts,' "[27] which " '. . . authorizes any person . . . to bring an action against the wrongdoer in the Federal courts, . . .' "[28] and as "modeled upon the second section of the Act of April 9, 1866, 14 Stat. 27, the two sections were intended to cover the same cases. . . ."[29]

---

[24] *Monroe v. Pape, supra,* n. 10.

[25] *Chamberlain v. Brown,* 442 S.W.2d 248 (Tenn. S. Ct. 1969).

[26] *Id.* at 250, the court stating: ". . . these statutes creating this action were directed to the federal trial forum, not the respective States."

[27] *Monroe v. Pape, supra,* n. 10, at 178, 179, quoting Mr. Kerr of Indiana, who also argued as to the section involved in the present appeal: " 'It is a covert attempt to transfer another large portion of jurisdiction from the State tribunals, to which it of right belongs, to those of the United States.' "

[28] *Id.* at 179, 180, quoting Senator Thurman of Ohio, who also stated: " 'The deprivation may be of the slightest conceivable character . . . and yet by this section jurisdiction of that civil action is given to the Federal courts instead of its being prosecuted as now in the courts of the States."

[29] *Id.* at 212, 213 (n. 18), Mr. Justice FRANKFURTER, in dissenting opinion, quoting Mr. Shellabarger, Chairman of the House Select Committee which authored the Act of April 20, 1871,

From the debates the majority in *Monroe* concluded that, "It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts. . . ."[30] While the legislative history set forth in *Monroe* is relevant in determining congressional intent as to exclusivity of federal court jurisdiction—as the Tennessee court held it to be—more relevant is the United States Supreme Court's emphasis on the Act of 1871 in determining the purpose of sec. 1979, the 1874 revision.

The high court makes evident that the language and purpose of the 1871 revision controls, not the abbreviation of such language in the 1874 revision. This takes us back to the 1871 revision which requires:

". . . such proceeding to be prosecuted in the several district or circuit courts of the United States, with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts, under the provisions of the act of the ninth of April, eighteen hundred and sixty-six."[31]

Since this is the only change from the provision in the original Act of 1866 that provided for exclusive jurisdiction in the federal district and circuit courts, there is here lacking that "clearly expressed" congressional intent to change by revision the requirement of exclusive

whose first section is now §1979, citing Cong. Globe, 42d Cong., 1st Session.

[30] *Id.* at 180, the high court also holding at 173, 174: ". . . the present section had three main aims.

"*First*, it might, of course, override certain kinds of state laws.
. . .

"*Second*, it provided a remedy where state law was inadequate. . . .

"But the purposes were much broader. The *third* aim was *to provide a federal remedy* where the state remedy, though adequate in theory, was not available in practice." [Emphasis supplied.]

[31] R.S. sec. 1979, Act of 1871, 17 Stat. 13.

federal jurisdiction contained both in the Act of 1866 and the 1870 revision. Plaintiff cannot thus bring this action in state court under R.S. sec. 1979, for the reason that such act, and its predecessors, as one court phrased it, ". . . created an entirely new right, federal in origin, and cognizable only in a court of the United States."[32]

Supporting its conclusion that the United States Supreme Court has "implicitly," although not expressly, decided that actions under the 1874 revised statute[33] can be brought in state courts, the majority finds support in a footnote to a dissenting opinion by Justice BRENNAN.[34] The Justice may have had second thoughts for, more recently, in another dissent, he wrote:

"When it enacted §1983, Congress weighed the competing demands of 'Our Federalism' and consciously decided to protect federal rights in the federal forum. As we have previously recognized, §1983 was enacted for the express purpose of altering the federal-state judicial balance that had theretofore existed, and of 'offering a uniquely federal remedy against incursions under claimed authority of state law upon rights secured by

[32] *Beauregard v. Wingard*, 230 F. Supp. 167, 185 (S.D. Cal. 1964).

[33] *See: Jones v. Mayer Co.*, 392 U.S. 409 (1968), construing sec. 1 of the Act of 1866 (not its counterparts in the Revised Statutes of 1874) as being a broad declaration of principle, not containing an enforcement provision. In *Jones*, the high court considered a variance between the wording of sec. 1 of the Act of 1866 and subsequent revisions, holding that the 1866 ending of sec. 1 "was deleted, presumably as surplusage, in §1978 of the Revised Statutes of 1874." *Id.* at 422, 423, n. 29. If the 1874 revision had the effect of superseding the earlier 1866 enactment, as the majority claims, there would have been no need to explain that the closing words of the 1866 Act were deleted as "surplusage" in the 1874 revision. They would simply have been repealed.

[34] *Aldinger v. Howard*, 427 U.S. 1, 36, n. 17 (1976), BRENNAN, J. in dissenting opinion stating: "The Court today appears to decide *sub silentio* a hitherto unresolved question by implying that §1983 claims are not claims exclusively cognizable in federal court. . . ."

the Constitution and the laws of the Nation.' *Mitchum v. Foster*, 407 U.S. 225, 239 (1972). State courts are, of course, bound to follow the Federal Constitution equally with federal courts, but Congress has clearly ordained, as constitutionally it may, that the federal courts are to be the '*primary* and powerful reliances' for vindicating federal rights under §1983. *Steffel v. Thompson*, 415 U.S. 452, 464 (1974) (emphasis in original). If federal courts are to be flatly prohibited, regardless of the circumstances of the individual claim of violation of federal rights, from implementing this 'uniquely federal remedy' because of deference to purported state interests in the maintenance of state civil suits, the Court has 'effectively cripple[d] the congressional scheme enacted in Section 1983.' *Juidice v. Vail*, supra, at ——, 51 L Ed2d 376, 97 S Ct 1211. (BRENNAN, J., dissenting)."[35]

The case in which this statement, in dissent, was made, the *Trainor v. Hernandez Case*, was a sec. 1983 action in federal court to restrain an attachment proceeding in an Illinois state court on the ground the attachment violated due process. The high court ruled that "basic concerns of federalism" counseled against interference by federal courts with legitimate state functions. The writer sees no authority "implicit" in this decision for bringing sec. 1983 actions in state courts. Justice STEVENS dissented, asserting that the relief sought could not be secured in the state courts until after the attachment proceedings were concluded. If a sec. 1983-based action had been available in the state courts to restrain the attachment proceedings, the high court majority surely would have pointed out to their colleague that the basis for his argument was incorrect.

The trouble with this search for the "implicit" in high court decisions is that it too easily leads to locating what is not there. The Revised Act of 1874 (restated in sec. 1983, United States Code) has been on the statute books

---

[35] *Trainor v. Hernandez*, — U.S. —, 52 L. Ed2d 486, 97 S. Ct. 1911 (1977). BRENNAN, J. dissenting.

for over 100 years. It would be strange that the United States Supreme Court would not have, somewhere along the way, in a single sentence stated that actions under the statute, and its revisions, could be brought in state, as well as federal courts if that was, by a majority of the high court, found to be the Congressional intent back in 1866 or 1874.

It is to be hoped that, by appeal of this 4-to-3 decision as to what is "implicit," but not expressed in United States Supreme Court decisions, or otherwise, the nation's highest tribunal soon will be respectfully requested to open or close the door to sec. 1983 actions being brought in the courts of the various states. In the meantime, the conclusion that state courts are not available for bringing actions under this 100-year-old federal statute in the state courts ought not be termed a "copping out." One can only "cop out" where one has a choice. Under the writer's analysis of the statutes, and high court decisions relating thereto, there is here no matter of choice. If Congress intended over 100 years ago exclusivity of jurisdiction in the federal courts, we may not entertain this case. If Congress did then intend concurrency of jurisdiction, federal and state, we must entertain this case. Unless and until the United States Supreme Court finds to the contrary, the writer would hold that, over 100 years ago Congress created a federal right, intending and providing for exclusive jurisdiction in the federal courts. The writer would affirm.

I am authorized to state that Mr. Justice LEO B. HANLEY and Mr. Justice CONNOR T. HANSEN join in this dissent.