No. A-CV-27-81

COURT OF APPEALS OF THE NAVAJO NATION

May 5, 1983

Grace BENALLY, Dorothy JIM, Appellants,

vs.

Mary Ford JOHN, Thomas STEVENSON, Appellees.

Appeal heard October 6, 1982 before Chief Justice Nelson J. McCabe and Associate Justices Robert B. Walters and Tom Tso.

Earl R. Mettler, Esq., of Farmington, New Mexico appearing for the appellants and George A. Harrison, Esq., Farmington, New Mexico, appearing for the appellees.

This is a jurisdiction case, raising the question of the sovereign authority of the Navajo Nation against that of the United States. The legal question presented is the extent of the exclusive judicial authority of the Courts of the United States and the scope of jurisdictional power of our own courts. More specifically we are dealing with the subject of allotted land within the Navajo Nation, which is allocated and managed by the United States. The policy factors at play are the international law rules that it is the duty of the United States to not intervene in the internal or external affairs of the Navajo Nation and that the Navajo Nation should decline the exercise jurisdiction over the public property of the United States destined for public use. Brownlie, Principles of Public International Law, p. 254 (1966); Briefly, The Law of Nations, p. 243 (1963).

We are dealing with concepts of governmental interest, jurisdiction over persons, territorial jurisdiction and subject matter jurisdiction, and therefore the interests of the governments, persons and judicial bodies involved are very important. We also deal with the nature of the property involved, its source, ownership, regulation and control.

The facts giving rise to this suit are these:

On April 29, 1980 the appellants here, Grace Benally and Dorothy Jim, filed a petition for the guardianship of their grandmother, Mary Ford Deschilly (who was also known as Mary Ford and E Kid des pah), for the limited purpose of bringing an action for the recovery of property allegedly fraudulently obtained. The property recited in the petition was an "allotment." The claim was that in 1978, while the grandmother was incompetent, certain individuals had her put her thumbprint on a deed, thereby illegally passing interest to the allotment. That act was allegedly one of fraud and undue influence, and a lawsut would be

necessary to recover the allotment on the ward's behalf. The prayer of the petition only indicated the purpose of the petition was to bring suit, and it did not indicate what court would entertain the suit.

However the petitioners also filed a complaint for the cancellation of the deed, and they recited that the parties reside within our territorial jurisdiction that the conveyance was fraudulent since the woman was not competent (and defendants knew this) and that there was undue influence exercised upon her. The complaint prayed the court to require the defendants to execute and file a deed back and that they give an accounting of the proceeds of the property.

On June 3, 1981 the Honorable Henry Whitehair dismissed the action for a lack of jurisdiction. This appeal followed.

In the meantime, there have been Indian probate proceedings with respect of the estate of the woman who executed the deed. In the Matter of the Estate of Ford, No. IP GA302G 81 (Office of Hearings and Appeals, Gallup, N.M.). While the person who was the subject of the guardianship and the proposed beneficiary of the lawsuit died on January 27, 1981, almost five months before the district court dismissal, no party has moved to dismiss the suit for mootness or a lack of proper party plaintiffs. However, since the issue here is capable of repetition, yet evading review and it is one which we may expect may subject the appellees to the same action again, we find the case to still be one in controversy and reviewable by this court. See Carafas v. LaVallee, 391 U.S. 234 (1968) and Weinstein v. Bradford, 423 U.S. 147 (1975).

This appeal has four issues presented:

1. Do our courts have jurisdiction over the parties and the subject matter of the District Court suit?

2. Is the fact there has been no determination of the competency of the decedent one of relevance in jurisdiction?

3. Do our courts have jurisdiction over an individual for the purpose of requiring him or her to transfer an allotment interest?

4. Was venue in the Shiprock Court proper?

The court has decided that it is necessary to address the first and third issues only. While the availability of a remedy may sometimes be a factor in jurisdiction, we do not reach that question here in a direct way. Since venue was not ruled upon by the trial court, we will not do so.

## PRELIMINARY OBSERVATION CONCERNING OUR JURISDICTION TO DECIDE NAVAJO JURIDICTION

The Administrative Law Judge of the Office of Hearings and Appeals presiding in the Indian probate case has already gratuitously ruled on this appeal, basing her ruling upon the matters before this court. This court is not pleased by the conduct of a foreign agent in interfering with our function by deciding this appeal for us. The administrative law judge has seen fit to determine our jurisdiction and to predict the outcome of litigation should this court hold there is jurisdiction. This agent of a department and a government which is required by its own laws to respect the self-determination and autonomy of this court has seen fit to predict that the likelihood of the underlying action prevailing is "practically nil;" that any action in the tribal court would be futile because of a predicted noncooperation of BIA

employees; that incompetency at the time of signing the deed cannot be determined by us because it would call into question BIA trust responsibility; that we lack the jurisdiction to determine the validity of the deed; and that the action could not be heard without the presence of the United States. The determination of our law and procedure was unnecessary to the probate proceeding, and it constitutes a bold and arrogant intrusion into our internal affairs, invading the sovereignty of the Navajo Nation. See, Brownlie, above, p. 254.

It is our authority to determine our jurisdiction, and the Hon. Administrative Law Judge is reminded that her appellate body, the Interior Board of Indian Appeals, has similarly so held when the Bureau of Indian Affairs attempted to oust it of jurisdiction in an Indian affairs matter. St. Pierre and the Original Chippewa Cree v. Commissioner of Indian Affairs, 9 IBIA 203, 218-219 (1982).

Therefore this court, the duly-constituted organ of Navajo Government designated to give final review of such matters, will proceed to decide the jurisdiction of the Navajo courts in this matter.

THE JURISDICTION QUESTION

We do not find the absolute ruling of the Office of Hearing and Appeals that there is no tribal court jurisdiction where alloted land is involved persuasive. One authority notes that the statutes limiting inconsistent tribal laws "do not directly restrict tribal court jurisdiction." Cohen, Handbook of Federal Indian Law, p. 343 (1982 Ed.). As to whether the allotment jurisdiction statutes indeed preempt tribal court action, that question is uncertain. Id. and p. 628. When there are federal rights which are enforcible in state courts, that doctrine should apply to tribal courts as well, where there is jurisdiction over the person or property. Id. p. 344. As Alexander Hamilton noted in The Federalist Papers No. 82:

> "The National and State systems are to be regarded as One Whole. The courts of the latter will of course be natural auxiliaries to the execution of the laws of the Union, and an appeal from them will as naturally lie to that tribunal which is destined to unite and assimilate and principles of national justice and the rules of national decisions." Quoted in Terry v. Kolski, 254 N.W.2d 704, 406 (Wisc. 1977).

This court of course is empowered, with the consent of the Secretary of the Interior, to apply federal law. 7 NTC Sec. 204(a). (The question remains as to whether the allotment jurisdiction statute is one which has been reserved to exclusive federal court jurisdiction).

A starting point in jurisdictional questions is the governmental interest of the jurisdictions involved. Ehrenzweig, Conflicts in a Nutshell, Sec. 8 (1965). The question of contacts with the jurisdiction to subject a person or his propety to court jurisdiction is not helpful here because such jurisdiction need not be exclusive. Texas v. New Jersey, 379 U.S. 674, 678 (1965). Therefore an examination of the governmental status and interests of the United States and the Navajo Nation is where we will begin.

## THE SOURCE OF NAVAJO JURISDICTONAL AUTHORITY

It is an elementary foundation block of United States - Indian nation relationships that Indian nations are sovereign and derive their sovereignty from their preexistence to the United States and their dealings with the United States as independent sovereigns. When sovereign Indian nations dealt with the United States by treaty, they did so in an international law sense. Further, they did not receive their lands and powers from the United States but only ceded lands and privileges to it. That is true of the Navajo Nation and must be remembered in connection with the Treaty of 1868.

These same principles apply to the jurisdiction of our courts. This is how our powers are derived:

> "The plaintiffs would argue that there is found no provision in the Federal Constitution for Indian courts. None is necessary. As already indicated, the Constitution, by authorizing the making of treaties with them, while not in and of itself establishing the sovereignty of the tribes, nevertheless does recognize their sovereignty. As interpreted by the United States Supreme Court, that sovereignty is absolute excepting only as to such rights as are taken away by the paramount government, the United States. Under this view, not even a Congressional Act would be necessary to establish the legality of the . . . Tribal Courts. However, regulatory powers over these judicial establishments have been exercised to promote uniformity, gradual assimilation and other ends . . . We accordingly hold that not only do the Indian Tribal Courts have inherent jurisdiction over all matters not taken over by the federal government, but that federal legislative action and rules promulgated thereunder support the authority of the Tribal Courts." Iron Crow v. Oglala Sioux Tribe of the Pine Ridge Reservation, 231 F.2d 89 (Emphasis in the original).

Therefore we hold that our courts have inherent jurisdiction over all matters not specifically denied by the Navajo Tribal Council or taken over specifically by the government of the United States. We also hold that our authority is a retained authority, not dependent upon a grant from the United States, and that such authority will be exercised in concurrent jurisdiction with the United States, where concurrent and not exclusive tribal jurisdiction lies. That is the present situation in the area of criminal law as well as other areas United States v. Wheeler, 435 U.S. 313, 328, 328 f.27 (1978).

## THE ALLOTMENT JURISDICTION STATUTE

The statute which deals with allotment claims provides that an

Indian "may" bring an action in a United States district court and that such courts have jurisdiction. 25 U.S.C. Sec. 345. The statute is permissive and not mandatory, and indeed one court decision (not directly involving an allotment) held that cases to transfer allotments to and from Indians can be brought in state court. United States v. Candelaria, 271 U.S. 432 (1926). It must remembered that the district courts of the United States are courts of limited jurisdiction and have only those powers which the United States Congress gives them. In contrast, our courts are courts of general jurisdiction with few jurisdictional limitations as regards the subject matter of the suits brought before us. Therefore 25 U.S.C. Sec. 345 was necessary in order to give the United States courts jurisdiction over allotted land, while we generally have jurisdiction over all territory within the Navajo Nation. There is, however, precident that land actions under 25 U.S.C. Sec. 345 are under exclusive federal court jurisdiction. McKay v. Kalyton 204 U.S. 458 (1907). It would appear to us that we do indeed have jurisdiction over Sec. 345 actions, but we will defer that question for a later ruling and confine ourselves to the action which is now before us on appeal.

We are speaking here of governmental interests. We do not know in which portion of the Navajo Nation the land in question here lies, but we assume it lies in an area added to the Navajo Nation by the United States after the treaty of 1868. The General Allotment Act was an assimilationist piece of legislation, and given the fact allotted land lies largely in the eastern part of the Navajo Nation, the land here must have been a part of those lands added to carry out the act. If so, then we are talking about lands given to the Navajo Nation with a condition attached to them, the condition being they would be held for individuals and alienated under the authority of the Untied States. In other words, there is a strong federal interest in those lands and their transfer, and interest which is not assumed by the government of the Navajo Nation. That being the case, it has been the policy of the executive and legislative arms of the Navajo Nation to permit the United States to engage in such transactions, and under the doctrine of immunity in the exercise of jurisdiction over a foreign state and its property, we should not normally exercise jurisdiction over such matters. Briefly, The Law of Nations, pp. 243-244 (1963). In other words, since the activities of the United States in the area of alloted lands have been permitted and the sphere of interest of the United States has been consistently exercised, our courts should defer to the United States as a matter of comity when dealing with alloted lands.

ACTIONS NOT WITHIN THE SPHERE OF INFLUENCE OF THE UNITED STATES

The Navajo courts will not try allotment actions where the United States would have to be a party. We urge the Navajo Government through its attorney general to clarify the application of 25 U.S.C. Sec. 345 to permit action by our courts in oder to avoid deciding that question as a judicial matter. (We will decide that matter if called upon to do so in a proper case).

However allotment actions involving the United States are not the only remedy available to an individual. An individual may choose a United States Court if the desire is to compel BIA Officials to make an

actual transfer of alloted land, but in this case we have a situation where the plaintiffs below desire only a declaration that the transfer was fraudulent and coercive and a judgment requiring the current individuals holding the deed to the land to sign it back and account for its use. The United States may or may not accept a deed from such individuals, but a Navajo court can order them to sign one and hold them in contempt if they refuse to do so.

The limits of this holding are that the Navajo courts will not directly deal with allotment titles until the law is further clarified, try title to alloted land or attempt to compel United States officials to transfer it, but in any action where action upon the person only is demanded, our courts may act. We have precisely the situation in Conroy v. Conroy, where the Oglala Sioux Tribal Court was held to have the authority to deal with allotted land as a necessary incident to divorce jurisdiction. 575 F.2d 175 (C.A. 8, 1978). The Navajo Nation inherently has the authority to protect its members from fraud, deceit, undue influence, overreaching, unconscionable conduct, torts and the other kinds of personal conduct the civil law is designed to regulate. For centuries equity jurisdiction, which we clearly have, has been designed to act upon the conscience, i.e. the person, in order to correct bad conduct. The first equity judges, the chancellors, were the king's personal agents, sent by him to correct injustices by enforcing his will against wrongdoers. It is nonsense to say that the Navajo Nation does not have such authority to act upon the person of individuals who commit civil wrongs. Our courts have the authority to declare that a wrong has been committed and, in equity cases, to give an individual an order to correct the wrong. In this case the inherent equitable jurisdiction of our courts can require the execution of a deed back by an individual or individuals, and it can jail them if they do not obey a court order. This does not involve the Bureau of Indian Affairs or the majesty of the United States, it involves a Navajo court applying Navajo law to Navajo parties to settle a Navajo dispute. The Treaty of 1868 and the pledge of the United States to respect preexisting Navajo sovereignty means nothing if Navajo affairs cannot be settled by Navajo courts.

Therefore we hold there is jurisdiction for the matter raised in the trial court.

ORDER

Based upon the foregoing discussion, this cause is REVERSED and REMANDED to the District Court for the Shiprock District with instructions to proceed in accordance with this opinion.