[L.A. No. 30313. In Bank. Feb. 19, 1975.]

EDWARD BROWN et al., Plaintiffs and Respondents, v.
PETER J. PITCHESS, as Sheriff, etc., et al., Defendants and Appellants.

COUNSEL

John H. Larson, County Counsel, and Michael H. Dougherty, Deputy County Counsel, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Charles R. B. Kirk, Deputy Attorneys General, as Amici Curiae on Behalf of Defendants and Appellants.

Terry Smerling, Richard A. Weisz and Ronald L. Sievers for Plaintiffs and Respondents.

Daniel M. Luevano, Rosalyn M. Chapman and Philip L. Goar as Amici Curiae on behalf of Plaintiffs and Respondents.

OPINION ▬

CLARK, J.—This action for declaratory and injunctive relief under the federal Civil Rights Act (42 U.S.C. § 1983) was filed in the Superior Court of Los Angeles County on behalf of the individual plaintiffs and all other unsentenced Los Angeles County jail inmates representing themselves against criminal charges. Plaintiff "pro. pers." complained of a variety of alleged conditions of their confinement, including the inadequacy of the jail law library and the prohibition against their giving legal assistance to *sentenced* inmates.

Denying relief in all other respects, the court granted preliminary injunctions ordering defendants to: (1) add the Los Angeles Daily Journal and United States Law Week to the collection of the jail law library; and (2) employ an attorney full time to assist *sentenced* inmates in preparing petitions challenging the legality of their confinement. Defendants contend the second injunctive order was an abuse of discretion.[1] ▇ Before reaching the merits, we must consider the threshold question whether California courts have jurisdiction over federal civil rights suits.

---

[1] Both parties appealed, but plaintiffs' appeal was dismissed pursuant to their request. Although mentioning both in their notice of appeal, defendants challenge only the second of the two injunctive orders, having expressly abandoned their appeal as to the first order in oral argument before this court.

Section 1983 of title 42 of the United States Code provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ." deprives another of rights, privileges, or immunities secured by the federal Constitution or laws, "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Defendants contend that federal courts have exclusive jurisdiction over section 1983 actions.

■ Unless Congress confers exclusive jurisdiction on federal courts, state courts competent to exercise it have concurrent jurisdiction to enforce federal law in civil actions. (*Dowd Box Co.* v. *Courtney* (1962) 368 U.S. 502, 508 [7 L.Ed.2d 483, 487, 82 S.Ct. 519]; *Grubb* v. *Public Utilities Comm.* (1930) 281 U.S. 470, 476 [74 L.Ed. 972, 977-978, 50 S.Ct. 374]; *Claflin* v. *Houseman* (1876) 93 U.S. 130, 136-137 [23 L.Ed. 833, 838-839]; *Cox* v. *Superior Court* (1959) 52 Cal.2d 855, 861 [346 P.2d 15]; *McCarroll* v. *L.A. County etc. Carpenters* (1957) 49 Cal.2d 45, 59 [315 P.2d 322].)

■ Section 1983 does not itself address the question of jurisdiction. The jurisdictional provision governing section 1983—28 United States Code section 1343(3)[2]—confers "original jurisdiction" on the federal district courts. ■ The phrase "original jurisdiction" means the power to entertain cases in the first instance, as distinguished from appellate jurisdiction; it does not mean exclusive jurisdiction. (*Bors* v. *Preston* (1884) 111 U.S. 252 [28 L.Ed. 419, 4 S.Ct. 407]; *People of Territory of Guam* v. *Rosario* (D.Guam 1969) 296 F.Supp. 140, 142.) ■ When intending to confer exclusive, as well as original, jurisdiction on the federal district courts, Congress is quite capable of making itself understood. For example, section 1338(a) of title 28 of the United States Code provides: "The district courts shall have *original jurisdiction* of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. *Such jurisdiction shall be exclusive* of the courts of the states in patent, plant variety protection and copyright cases." (Italics added.)

The amicus brief of the Attorney General points out that section 1983 as originally enacted provided that proceedings under it were to be

---

[2]"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . .

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

prosecuted "in the several district or circuit courts of the United States." (Civil Rights Act of 1871, Act of 20 April 1871, § 1, 17 Stat. 13.) However, the language expresses an intent to confer *original, not exclusive,* jurisdiction on the federal courts, there being no general federal-question jurisdiction in the lower federal courts at that time. (*District of Columbia* v. *Carter* (1973) 409 U.S. 418, 427-428, fns. 20-22 [34 L.Ed.2d 613, 622, 93 S.Ct. 602].) Congress was as capable then as it is now of making its purpose unmistakable when it intended to confer exclusive jurisdiction on the federal courts. For example, the Civil Rights Act of 1866 provided: "That the district courts of the United States . . . shall have, exclusively of the courts of the several States, cognizance of all crimes and offenses committed against the provisions of this act . . . ." (Act of 9 April 1866, § 3, 14 Stat. 27.) The Civil Rights Act of 1875 was similarly explicit. (Act of 1 March 1875, § 3, 18 Stat. 335, 336.)

The Attorney General argues against concurrent jurisdiction on the ground that section 1983 creates a "remedy," not a "right." The significance of the purported distinction is never made clear. However, persuasive authority holds that section 1983 does create a substantive "right." In determining the limitations period applicable to an action under section 1983, the Court of Appeals in *Smith* v. *Cremins* (9th Cir. 1962) 308 F.2d 187 [98 A.L.R.2d 1154], considered whether such an action is based "upon a liability created by statute," within the meaning of section 338, subdivision 1, of the California Code of Civil Procedure. The court concluded: "Section 1983 of the Civil Rights Act clearly creates rights and imposes obligations different from any which would exist at common law in the absence of statute. A given state of facts may of course give rise to a cause of action in common-law tort as well as to a cause of action under Section 1983, but the elements of the two are not the same. The elements of an action under section 1983 are (1) the denial under color of state law (2) of a right secured by the Constitution and laws of the United States. Neither of these elements would be required to make out a cause of action in common-law tort; both might be present without creating common-law tort liability." (308 F.2d at p. 190; see *Franklin* v. *City of Marks* (5th Cir. 1971) 439 F.2d 665, 669; *Glasscoe* v. *Howell* (8th Cir. 1970) 431 F.2d 863, 865.)

The Attorney General's remaining contribution to the discussion is catastrophic metaphor, characterizing the finding of concurrent jurisdiction in this case as having "loosed a Johnstown flood of litigation which unless checked promises to inundate the judicial system of this State." This dire prophecy is beside the point, implying as it does that exercise

of jurisdiction is discretionary here. To the contrary, "the existence of [concurrent] jurisdiction creates the duty to exercise it." (*Gerry of California* v. *Superior Court* (1948) 32 Cal.2d 119, 122 [194 P.2d 689]; see *International Prisoners' Union* v. *Rizzo* (E.D.Pa. 1973) 356 F.Supp. 806, 810.) Moreover, the alleged deprivation of constitutional rights raised here under section 1983 is not a novel claim in the courts of this state. This court has considered the very same claim in the context of a habeas corpus proceeding (*In re Harrell* (1970) 2 Cal.3d 675 [87 Cal.Rptr. 504, 470 P.2d 640]), as has the United States Supreme Court (*Johnson* v. *Avery* (1969) 393 U.S. 483 [21 L.Ed.2d 718, 89 S.Ct. 747]). The federal courts having a well-recognized reputation as zealous guardians of civil rights, it is unlikely this decision will precipitate a "flood of litigation" in California courts.

The majority of courts considering the question concur in our conclusion that state courts do have concurrent jurisdiction over actions arising under section 1983. (*New Times, Inc.* v. *Arizona Board of Regents* (1974) 110 Ariz. 367 [519 P.2d 169, 176]; *Dudley* v. *Bell* (1973) 50 Mich.App. 678 [213 N.W.2d 805, 806-807]; *Clark* v. *Bond Stores, Inc.* (1973) 41 App.Div.2d 620 [340 N.Y.S.2d 847, 848]; see *Gabaldon* v. *United Farm Workers Organizing Committee* (1973) 35 Cal.App.3d 757, 762, fn. 4 [111 Cal.Rptr. 203]; *Long* v. *District of Columbia* (1972) 469 F.2d 927, 937 [152 App.D.C. 187]; *International Prisoners Union* v. *Rizzo, supra*, 356 F.Supp. 806, 810; *Luker* v. *Nelson* (N.D.Ill. 1972) 341 F.Supp. 111, 116; *contra, Chamberlain* v. *Brown* (1969) 223 Tenn. 25 [442 S.W.2d 248, 252]; see *Beauregard* v. *Wingard* (S.D.Cal. 1964) 230 F.Supp. 167, 185.)

█ We now consider whether the court abused its discretion by issuing the preliminary injunction ordering defendants to provide an attorney to assist sentenced inmates in seeking postconviction relief.

The Los Angeles County jail prohibits "pro. pers."—unsentenced inmates representing themselves in pending criminal actions—from rendering legal assistance to sentenced inmates. Relying on *Johnson* v. *Avery, supra*, 393 U.S. 483 [21 L.Ed.2d 718, 89 S.Ct. 747] and *In re Harrell, supra*, 2 Cal.3d 675 [87 Cal.Rptr. 504, 470 P.2d 640], plaintiff pro pers. sought to enjoin the practice, contending it prevents sentenced inmates from obtaining assistance in seeking postconviction relief. Defendants responded that the practice is but a reasonable restriction on inmate mutual assistance, valid under both *Johnson* and *Harrell.* After defendants declined to propose alternatives, the court issued the injunctive order of which they complain.

In *Johnson* v. *Avery, supra,* a Tennessee prisoner disciplined for violating a regulation prohibiting the rendering of legal assistance to other inmates sought relief by way of habeas corpus. The high court's concern was that inmates with intellectual or educational handicaps might be denied access to the courts. "Jails and penitentiaries include among their inmates a high percentage of persons who are totally or functionally illiterate, whose educational attainments are slight, and whose intelligence is limited." Noting that "[t]here can be no doubt that Tennessee could not constitutionally adopt and enforce a rule forbidding illiterate or poorly educated prisoners to file habeas corpus petitions," the court struck down the challenged rule on the ground that "in the absence of any other source of assistance for such prisoners, [it] effectively does just that." (393 U.S. at p. 487 [21 L.Ed.2d at p. 722].)

When inmates of San Quentin and Folsom prisons relied on *Johnson* in complaining in *In re Harrell, supra,* of limitations placed upon their efforts to provide legal assistance to other inmates, this court drew two important distinctions. The first distinction is between the rights of inmates with intellectual or educational handicaps who, therefore, require assistance in seeking postconviction relief and, on the other hand, "the assumed prerogatives of those inmates who have . . . set themselves up as legal consultants." (2 Cal.3d at p. 688.) The second distinction is between preventing and reasonably restricting mutual legal assistance among inmates. "[O]n the one hand *Johnson* establishes that, absent any suitable alternative means for providing legal assistance to illiterate and uneducated prisoners, there may be no prison rule which has the effect of *preventing* mutual prisoner assistance. On the other hand, however, *Johnson* concludes that prison rules which do not *prevent,* but merely restrict in a reasonable manner, prisoner assistance do not offend the Constitution. The question remains whether a given restriction is proper." (2 Cal.3d at p. 686; italics in original.)

Determining whether a given restriction is proper involves balancing the *"extent* of restriction against the *need* for restriction. . . . If the application of the rule impedes or discourages mutual prisoner assistance to a significant degree, the burden of justification will be great. If, on the other hand, the application of the rule results in mere inconvenience to prisoners seeking legal assistance and there is a clear institutional reason for the restriction, the rule must be sustained." (2 Cal.3d at p. 686; italics in original.)

Applying these principles, this court in *Harrell* upheld the refusal of prison authorities to permit a "writ writer" confined at Folsom to

correspond with inmates incarcerated at other institutions. "[T]he restriction in question has no significant effect upon the rights guaranteed in *Johnson*. Again, it is the rights of the prisoner needing, rather than those of the prisoner giving, legal assistance which concern us. *Johnson* certainly offers no support for the proposition that illiterate and uneducated inmates have a constitutional right to the assistance of *a particular inmate* in the preparation of applications for relief; rather the right there enunciated is the right *to be assisted.* No infringement upon that right necessarily results from restrictions upon the activities of a particular inmate 'lawyer.' Thus, those inmates at institutions other than Folsom who are prevented from corresponding with petitioner McKinney by valid regulations limiting the number and identity of correspondents may seek legal assistance from inmates at their own institutions." (2 Cal.3d at p. 690; italics in original.)

The regulation challenged here, like that upheld in *Harrell*, restricts—but does *not prevent*—mutual legal assistance among inmates. Just as prisoners in need of legal assistance in *Harrell* could turn to other inmates at the same prison, sentenced county jail inmates in need of legal assistance here can turn to other sentenced inmates. The question remains whether this policy *unreasonably* restricts access to the courts by sentenced inmates.

The restriction appears to be no more *extensive* here than in *Harrell*. Mutual legal assistance there was also limited to that provided by sentenced inmates, prisons containing nothing but sentenced inmates. The *extent* of the restriction in *Harrell* was held to be so insignificant that the *need* for it was not discussed. Security considerations support segregation of sentenced and unsentenced inmates because of the latter's possible access to contraband during trips to court. Insofar as they have greater privileges, pro. pers. present greater risks. The grounds of this restriction also include statute and court rule. Section 4001 of the Penal Code provides that county jail inmates "committed on criminal process and detained for trial" be confined "separately and distinctly" from inmates "already convicted of crime and held under sentence." The Los Angeles Superior Court memorandum regarding pro. per. privileges expressly prohibits them from rendering legal assistance to other inmates.

However, the restrictive effect of this policy was compounded by the fact that sentenced inmates did not have access to a law library when the court ruled; only pro. pers. could use the jail law library. Therefore,

regardless of their intelligence or education, denying sentenced inmates assistance from pro. pers. tended to deny them access to the courts. Being supported by substantial evidence, the preliminary injunction must be affirmed. However, defendants may petition the superior court to dissolve the injunction on the ground circumstances have changed in the interim.

The declarations of seven sentenced inmates were admitted into evidence on plaintiffs' motion. Their common complaint was that sentenced inmates had no access to "legal materials or resources." None alleged he was intellectually or educationally handicapped. To the contrary, all complained that sentenced inmates were not permitted to use the jail law library, implying they were competent to do their own legal research. Five of the seven stated that, given the opportunity, they would use the jail law library *or* the services of a pro. per., implying either alternative would be satisfactory. Their needs, therefore, appear to have been satisfied in the interim because the jail now makes a law library available to sentenced inmates pursuant to federal court order, according to defendants' petition for rehearing in the Court of Appeal.

The preliminary injunction appears to be partly based on the misconception that the mutual legal assistance available to disadvantaged inmates must be provided by inmates granted pro. per. status or somehow found similarly qualified.[3] Pro. per. status must not be treated as a jailhouse law degree or an exclusive license to practice writ writing. That an inmate has been granted an opportunity to represent himself does not mean he is uniquely qualified to assist others. But even if that were the case, former pro. pers. are certain to be found in the sentenced inmate population, being no more likely to be acquitted than defendants represented by counsel. *Johnson* and *Harrell* are satisfied if inmates with intellectual or educational handicaps can receive legal assistance from inmates without such handicaps.

---

[3] "THE COURT: . . . The point is, the pro pers have all received these privileges after at least some sort of preliminary examination by a municipal court judge; isn't that correct, counsel? [¶] [DEFENDANTS' COUNSEL]: I think that's correct. [¶] THE COURT: So we can assume they have at least some basic ability, some basic understanding of the law; at least sufficient that a superior court judge felt they could handle their own case. And there is no showing that any of the [sentenced inmates] have that. [¶] . . . [¶] [DEFENDANTS' COUNSEL]: But you're assuming that pro pers are the only jailhouse lawyers. There are a lot of so-called jailhouse lawyers who are not in pro per status and maybe never have been. [¶] THE COURT: But if we are going to talk about a satisfactory alternative, then I think that at the very minimum that we should insist that they be people that at least have established to somebody that's reasonably expert—and I assume a superior court judge is reasonably expert—to determine they have at least a minimum of qualifications, and these people apparently have all passed that test."

The preliminary injunction appealed from is affirmed without prejudice to defendants' petitioning the superior court to dissolve it in light of changed circumstances.[4]

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Burke, J.,* concurred.

[4]Because of their indigency plaintiffs were granted a preliminary injunction without having to post the bond to cover defendants' potential damages otherwise required by section 529 of the Code of Civil Procedure. Defendants' contention that the undertaking called for by section 529 is "mandatory" and cannot be dispensed with under appropriate circumstances was recently rejected by this court in *Conover* v. *Hall* (1974) 11 Cal.3d 842, 850-853 [114 Cal.Rptr. 642, 523 P.2d 682].

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.