945 F.2d 410
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Sammy WILLIAMS, Plaintiff-Appellant,
v.
R.G. BORG, B.A. Textor, Dr. Burgant, Dr. Shelder and M.
Spanos, Defendant-Appellee.
Sammy WILLIAMS, Plaintiff-Appellant,
v.
R.G. BORG, B.A. Textor, Dr. Burgant, Dr. Shelder, Spanos,
Textor, Dr., Dr. Burvant, Dr. Shedler and M.
Spanos, Defendant-Appellees.
Sammy WILLIAMS, Plaintiff-Appellant,
v.
R.G. BORG, B.A. Textor, Dr. Burgant, Dr. Shelder and M.
Spanos, Textor, Dr., Dr. Burvant, Dr. Shedler and
M. Spanos, Defendant-Appellees.
 No. 90-16269.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 9, 1991.*
Decided Oct. 3, 1991.
 
 Before CANBY and KOZINSKI, Circuit Judges and NIELSEN** District Judge.
 MEMORANDUM***
 Sammy Williams filed a civil rights action pursuant to 42 U.S.C. § 1983 in federal district court alleging that prison officials had denied him adequate medical treatment in violation of the eighth amendment. Williams had previously brought a habeas corpus proceeding and a motion for specific performance in California state court also alleging that prison officials' deliberate indifference to his medical needs constituted an eighth amendment violation. Based on the record before it, the state court dismissed Williams' state court actions.
 The defendants moved in district court for summary judgment on the ground that Williams was seeking to re-litigate in federal court the same claim that had been litigated and decided in the state court action. The district court referred the matter to a United States Magistrate. The Magistrate recommended that the court grant the defendants' motion for summary judgment because the principles of res judicata barred the federal action; the issues presented had already been fully and fairly litigated in state court. The district court adopted the Magistrate's findings and recommendations and granted summary judgment in favor of the defendants. Williams appeals.
 We reverse and remand to the district court for further proceedings consistent with this disposition.
 FACTS
 Sammy Williams entered Folsom State Prison on January 27, 1989. He presents the following version of what occurred there: upon arrival, he was issued a pair of high-top boots, but advised the issuing officer that he was unable to wear that type of boot because a recent arterial bypass operation had left scar tissue on his left ankle. A prison doctor, Dr. Milliman, warned Williams that wearing the high-top boots could cause a break down of the scar tissue which would result in opening the wound. Williams filed an Institutional Grievance requesting low-cut shoes on April 14, 1989. Williams alleges that he never received the requested shoes from the prison, and that the prison officials denied his requests to send home for them.
 Shortly thereafter, the scar tissue in Williams' ankle did break down, leaving the wound open. Williams started receiving medical treatment from Dr. Burvant, another prison doctor. Dr. Burvant applied a medicated bandage called an "unna's boot" to Williams' ankle. Williams alleges that this treatment aggravated the existing wound and caused an additional open wound on the other side of his ankle. Williams repeatedly requested that he be provided with certain medications that he had used effectively prior to entering Folsom.[1] The prison officials determined that the requested medications posed a security risk and denied Williams' requests.
 Williams filed a Petition for Writ of Habeas Corpus in Sacramento County Superior Court on August 7, 1989. The Petition alleged facts pertaining only to Dr. Burvant, the application of an unna's boot, and the denial of requested medications and low-cut shoes. On September 8, 1989, Judge Ridgeway of the Superior Court requested the defendants to show cause why the writ of habeas corpus should not be issued. Judge Ridgeway directed the defendants to address two issues only:
 (1) Whether petitioner has received boots sufficient to meet his medical needs, and if not, why?
 (2) Whether Folsom Officials are able to acquire the low-cut boots from another institution ... and if so, why have they not so acquired these boots?
 Defendants' response to Judge Ridgeway's inquiry is not contained in the record. On September 12, 1989, Williams filed a Motion for Specific Performance in the same state court requesting that the court compel the prison officials to provide appropriate shoes and medication.
 On October 1, 1989, Dr. Burvant was replaced at Folsom by Dr. Shedler. Dr. Shedler's treatment of Williams' ulcerated ankle wound consisted of twice-daily soakings in what Williams' contends were unsterilized containers and the spraying of commercial chlorine bleach on Williams' foot and ankle. When Williams' wounds did not improve, he sent home for the medications that he had used previously, but a prison doctor returned these. In addition, the doctor denied Williams' repeated requests to see a specialist.
 In November of 1989, Williams filed his section 1983 action in federal district court requesting injunctive relief and damages. On December 1, 1989, the district court asked the California Deputy Attorney General, attorney for the defendants, to respond to Williams' request for a preliminary injunction.
 On December 4, 1989, Williams was taken to Mercy Hospital because his ankle wounds had become so aggravated. According to Williams, Dr. Villarica of Mercy Hospital criticized the treatments Williams had been receiving at Folsom Prison. In addition, Dr. Villarica determined that a bypass operation was necessary. On December 11, 1989, Williams underwent bypass surgery to restore circulation to his foot. On that same day, the Deputy Attorney General responded to the district court as to why Williams' request for a preliminary injunction should be denied. In that letter, the Deputy Attorney General stated that "[a]t the present time, the ulcers are clean and dry and healing slowly"; "[t]here is no evidence that there presently is deliberate indifference to plaintiff's medical needs"; and "[p]laintiff is receiving treatment with different medications [than he requested]." On December 12, 1989, Williams underwent an additional bypass operation.
 On December 20, 1989, Williams was released from Mercy Hospital and entered the Folsom infirmary. The Mercy Hospital doctor had prescribed medications for Williams, the same medications that he had been requesting, and supplied those to the infirmary. Williams was released from the infirmary on December 29, 1989, at which time Dr. Shedler ordered that the prescribed medications be discontinued. The soakings and bleach treatments were resumed. On January 1, 1990, Dr. Shedler was replaced at Folsom by Dr. Milliman.
 On January 29, 1990, the Superior Court, focusing mainly on whether Williams had received low-cut boots[2], denied Williams' habeas petition and his motion for specific performance. Three days later, on February 1, 1990, Williams returned to Mercy Hospital because of to extensive swelling, blistering, and infection in his foot. At the hospital, Dr. Adams determined that gangrene had set in, and that Williams' left leg should be amputated. On February 15, 1990, Dr. Adams amputated the leg below the knee.
 In the meantime, the district court had referred Williams' case to a United States Magistrate. On February 24, 1990, the Magistrate issued a "Findings and Recommendation" on Williams' motion for a preliminary injunction. The Magistrate did not set out specific findings of fact, or discuss what facts led to his conclusion that "there appears to be no actual threat of irreparable harm. Plaintiff is apparently being treated, and thus there is no substantial disregard of his medical needs requiring injunctive relief at this time."
 On March 2, 1990, the prison officials filed a motion for summary judgment. The district court referred this, too, to the Magistrate. On the same day, Williams' leg was further amputated above the knee. On March 20, 1990, Williams was returned to Folsom Prison. Williams alleges that he has received no follow-up treatment and no therapy.
 On April 9, 1990, the district court adopted the Magistrates' February 24th findings and recommendations, and denied Williams' motion for a preliminary injunction. On April 30, 1990, the Magistrate filed "Findings and Recommendations" on defendants' motion for summary judgment. The Magistrate concluded that because Williams had "raised the same claims in the Sacramento Superior Court ... the principles of res judicata should bar this action." On August 29, 1990, the district court adopted the Magistrate's findings and recommendations in full and granted the defendants' motion for summary judgment.
 DISCUSSION
 We review a district court's grant of summary judgment de novo. 49er Chevrolet, Inc. v. General Motors Corp., 803 F.2d 1463, 1466 (9th Cir.1986), cert. denied, 480 U.S. 947 (1987). The issue that was before the district court and that is now before us is what, if any, preclusive effect the Sacramento Superior Court judgment has on Williams' section 1983 claim in federal court.
 Federal courts must afford full faith and credit to state judicial proceedings. 28 U.S.C. section 1738. See Allen v. McCurry, 449 U.S. 90 (1980) (federal courts hearing § 1983 actions must give collateral estoppel or issue preclusive effect to state court judgments); Migra v. Warren City Sch. Dist., 465 U.S. 75 (1984) (federal courts hearing § 1983 actions must give res judicata or claim preclusive effect to state court judgments). Whether a prior state court judgment bars litigation of a section 1983 claim depends on the preclusion rules of the state, not those of the federal courts. Migra, 465 U.S. at 81.
 Under California law, res judicata precludes a second suit between the same parties on the same cause of action so long as the first suit concluded in a final judgment on the merits. Los Angeles Branch NAACP v. Los Angeles Unified School Dist., 750 F.2d 731, 737 (9th Cir.1984), (en banc) cert. denied, 474 U.S. 919 (1985) (citing Agarval v. Johnson, 25 Cal.3d 932, 954, 160 Cal.Rptr. 141, 155, 603 P.2d 58, 72 (1979); Slater v. Blackwood, 15 Cal.3d 791, 795, 126 Cal.Rptr. 225, 226, 543 P.2d 593, 594 (1975)). The parties do not dispute that there was a final judgment on the merits in state court and that this action is between the same parties. In dispute, however, is whether Williams' suit in federal court involves the same cause of action as his state claim.
 We must look to California law to determine what constitutes a cause of action for res judicata purposes. In Eichman v. Fotomat Corp., 147 Cal.App.3d 1170, 1174-75, 197 Cal.Rptr. 612, 614 (1983), the court explained:
 California law approaches the issue [of res judicata] by focusing on the "primary right" at stake: if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.
 See also Slater v. Blackwood, 15 Cal.3d 791, 795, 543 P.2d 593, 594, 126 Cal.Rptr. 225, 226 (1975).
 Under this formulation, we reject the position that Williams' state claim and his entire federal claim involve the same cause of action; the two claims do not involve the "same wrong by the defendant."[3] Williams' state claim alleged wrongs by prison officials prior to August 7, 1989, the date upon which he filed his Petition for Writ of Habeas Corpus in state court. His federal claim alleges some of those same wrongs, but includes additional ones committed after that date. Under California law, the scope of litigation in state court is framed by the complaint at the time it is filed. Los Angeles Branch NAACP, 750 F.2d at 739. We noted in Los Angeles Branch NAACP that "[t]he rule that a judgment is conclusive as to every matter that might have been litigated 'does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated.' " 750 F.2d at 739 (citing Kettelle v. Kettelle, 110 Cal.App. 310, 312, 294 P. 453, 454 (1930); see Lord v. Garland, 27 Cal.2d 840, 849, 168 P.2d 5, 11 (1946); Brown v. Brown, 170 Cal. 1, 4, 147 P. 1168, 1170 (1915); Metropolis Trust & Savings Bank v. Barnet, 165 Cal. 449, 452-53, 132 P. 833, 834 (1913)). Williams could have brought events occurring after the filing of the complaint into the scope of the state litigation by filing a supplemental complaint with leave of court, Cal.Civ.Proc.Code § 464, but he was not required to do so. Our reading of the record indicates that Williams did not file a supplemental complaint in Sacramento Superior Court. Accordingly, we determine the bar to apply only to events occurring on or before August 7, 1989.[4]
 Williams' case is distinguishable from one where the plaintiff charges the defendant with conduct that caused an injury and then, after losing that lawsuit the plaintiff decides to bring a new complaint because his injury worsens. In that situation, the defendant has engaged in no additional illegal conduct. Here, however, Williams alleges additional and different conduct committed by the defendants that give rise to his section 1983 claim in federal court. The fact that the state court found that the prison officials had provided Williams adequate medical care prior to August 7, 1989, is independent of the question the defendants acted with deliberate indifference to Williams' medical needs after that date.[5] It was only after August 7 that Dr. Shedler began treatment of Williams, treatment which consisted of soaking and use of bleach, and that Williams' medications were returned and his requests for a specialist were denied. The California Superior Court's ruling does not immunize Folsom Prison officials from liability for all future conduct; it simply prohibits Williams from suing on claims that were or should have been adjudicated in the prior action.
 CONCLUSION
 Williams may pursue his section 1983 action in federal court for any allegedly wrongful acts committed by the defendants after August 7, 1989.[6] In pursuing his section 1983 claim, Williams may introduce evidence of events occurring before that date only so long as it is relevant to a claim of wrongful conduct committed by the prison officials after August 7, 1989. He may not, however, re-litigate his claim that the prison officials violated his civil rights on or before August 7, 1989. See Los Angeles Branch NAACP, 750 F.2d at 740-41; Bronson v. Board of Education, 525 F.2d 344, 350 (6th Cir.1975), cert. denied, 425 U.S. 934 (1976).
 REVERSED and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable William Fremming Nielsen, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The requested medications were Stomahesive Powder, Duo Derm Bandages, Betadine Solution, and Skin Prep
 
 
 [2]
 The Superior Court was consistent in its focus. As noted, the Superior Court had narrowed the focus of its attention as early as September 8, 1989, when it asked the defendants to respond to specific questions
 
 
 [3]
 This determination makes it unnecessary for us to address whether Williams' state claim and his federal claim involve the same injury
 
 
 [4]
 All issues that were actually litigated or that might have been litigated as part of the cause of action are barred. Los Angeles Branch NAACP, 750 F.2d at 737 (citing Olwell v. Hopkins, 28 Cal.2d 147, 152, 168 P.2d 972, 975 (1946)). Because Williams could have brought his section 1983 claim in state court, Brown v. Pitchess, 13 Cal.3d 518, 531 P.2d 772, 774-75, 119 Cal.Rptr. 204, 206-07 (1975); see Trujillo v. County of Santa Clara, 775 F.2d 1359, 1366 (9th Cir.1985), he is barred from pursuing a section 1983 claim in federal court for events occurring on or before August 7, 1989
 
 
 [5]
 The Deputy Attorney General wrote, on December 11, 1989, that Williams' wounds were "clean and dry and healing slowly." Williams, however, alleges that at that time he had been at Mercy Hospital for one week and was on that very day undergoing bypass surgery
 
 
 [6]
 We express no opinion, of course, on the merits of Williams' claim of deliberate indifference to his medical needs; we hold only that it is not barred by res judicata