[No. S053577. Jan. 9, 1997.]

KINGSTON CONSTRUCTORS, INC., Plaintiff and Appellant, v. WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant and Respondent.

940

**COUNSEL**

Ronald K. Losch and Lesley Annis for Plaintiff and Appellant.

Mayer, Brown & Platt, Kenneth S. Geller and Donald M. Falk for Defendant and Respondent.

**OPINION**

**MOSK, J.**—We granted review in this cause to address a question of first impression concerning the Washington Metropolitan Area Transit Authority Compact (hereafter the WMATA Compact or the compact) and its creature, the Washington Metropolitan Area Transit Authority (hereafter WMATA or the authority), which is a regional instrumentality empowered, among other things, to provide transit facilities in and around the District of Columbia and neighboring parts of the State of Maryland and the Commonwealth of Virginia, comprising the Washington Metropolitan Area Transit Authority Zone (hereafter the WMATA Zone).

The question is: Do the courts of the State of California have jurisdiction of actions brought by or against WMATA?

For the reasons that follow, we conclude that the answer is: No.

I

On May 28, 1992, Power Energy Industries (hereafter PEI), a California corporation, brought an action in the Los Angeles Superior Court, bearing No. BC056254, against Kingston Constructors, Inc. (hereafter Kingston), another California corporation, and WMATA. PEI asserted various claims in

contract and in tort, and sought damages and costs including attorney fees, based on allegations to the following effect: WMATA entered into a contract with Kingston to supply and install certain electrical transformers, with PEI as an intended third party beneficiary to design and manufacture the items; Kingston in turn entered into a subcontract with PEI to design and manufacture the electrical transformers; WMATA and Kingston proceeded to breach duties they owed PEI pursuant to the contract and the subcontract, and caused it injury; they also violated obligations they bore it under the law of torts, and caused it injury in this way as well.

By letter dated July 24, 1992, WMATA informed the clerk of the superior court that it would not enter an appearance in No. BC056254 because, among other reasons, under section 81 of the WMATA Compact the superior court did not have jurisdiction of the action as to the authority. Within days, WMATA communicated its position to PEI, and PEI in turn communicated it to Kingston.

It appears that, on or about September 9, 1992, on PEI's motion, the superior court dismissed Kingston as a party from No. BC056254 without prejudice.

On October 19, 1992, on PEI's application, the clerk of the superior court entered WMATA's default in No. BC056254.

It appears that, on or about November 10, 1992, PEI brought an action in the superior court, bearing No. BC068273, against Kingston alone—an action that was substantially similar to No. BC056254.

On December 22, 1993, as part of the settlement of No. BC068273, PEI assigned to Kingston its claims against WMATA in No. BC056254.

On May 5, 1994, the superior court rendered judgment on default in No. BC056254,[1] in favor of Kingston as assignee of PEI's claims and against WMATA, awarding damages in the sum of $6,934,758, plus pre- and postjudgment interest, and attorney fees in the sum of $50,655.

On September 1, 1994, on WMATA's motion, the superior court issued an order vacating as void the judgment in No. BC056254.[2] It concluded that, under section 81 of the WMATA Compact, it did not have jurisdiction of the action.

---

[1]Apparently because of a clerical error, the judgment incorrectly bears No. BC068273.

[2]Apparently because of the clerical error on the judgment (see fn. 1, *ante*), the order incorrectly bears No. BC068273.

On November 9, 1994, Kingston filed a notice of appeal from the superior court's order in No. BC056254.[3]

On April 3, 1996, in an opinion subsequently certified for publication, Division Two of the Second Appellate District of the Court of Appeal affirmed the superior court's order in No. BC056254.[4] It held that, under section 81 of the WMATA Compact, the lower court did not have jurisdiction of the action.

On July 10, 1996, on Kingston's petition, we granted review. We now affirm.

II

The issue before us is whether California courts have jurisdiction of actions brought by or against WMATA. Its resolution requires us to set out the background.

WMATA is a regional instrumentality empowered, among other things, to provide transit facilities in and around the District of Columbia and neighboring parts of Maryland and Virginia, which comprise the WMATA Zone. (Pub.L. No. 89-774 (Nov. 6, 1966) 80 Stat. 1324.) Its ultimate source of funding is Congress, the district, and these two states. (*Id.*, § 1, 80 Stat. 1331.)

The WMATA Compact established WMATA and created the WMATA Zone. The compact was initiated and consummated by Congress for federal purposes, including the "effective performance of the functions of the United States Government located within the [National Capital] Region" and the "preservation of the beauty and dignity of the Nation's Capital." (Pub.L. No. 89-774 (Nov. 6, 1966) preamble, 80 Stat. 1324; see generally, Sen.Rep. No. 1491, 89th Cong., 2d Sess., pp. 3-5, 27.) The compact was also intended to further joint federal, state, and local objectives in the "Region," such as the "satisfactory movement of people and goods," the "alleviation of present and future traffic congestion," "economic welfare and vitality," "orderly growth and development," and the "comfort and convenience of . . . residents and visitors." (Pub.L. No. 89-774 (Nov. 6, 1966) preamble, 80 Stat. 1324.)

The WMATA Compact was entered into by the three signatories within the WMATA Zone. The compact was joined by the District of Columbia,

---

[3]Apparently because of the clerical error on the order (see fn. 2, *ante*), the notice of appeal incorrectly bears No. BC068273.

[4]Apparently because of the clerical error on the notice of appeal (see fn. 3, *ante*), the Court of Appeal's opinion incorrectly bears No. BC068273.

through enactment by Congress (Pub.L. No. 89-774 (Nov. 6, 1966) 80 Stat. 1324-1325) pursuant to the United States Constitution and its powers thereunder, specifically: (a) article I, section 8, clause 17, which grants it power "[t]o exercise exclusive Legislation in all Cases whatsoever, over [the] District" as "the Seat of the Government of the United States"; (b) article I, section 8, clause 3, which grants it power "[t]o regulate Commerce . . . among the several States"; and (c) article I, section 8, clause 18, which grants it power "[t]o make all Laws which shall be necessary and proper for carrying [its other powers] into Execution." The compact was also joined by Maryland, which is one of the two states that border the district and come within the zone, through enactment by its General Assembly. (1965 Md. Laws, ch. 869.) The compact was joined as well by Virginia, which is the other of the two states that border the district and come within the zone, through enactment by its General Assembly. (1966 Va. Acts, ch. 2.)

The WMATA Compact was consented to by Congress (Pub.L. No. 89-774 (Nov. 6, 1966) preamble, 80 Stat. 1324-1325) under article I, section 10, clause 3 of the United States Constitution, which provides that "[n]o State shall, without the Consent of Congress, . . . enter into any . . . Compact with another State . . . ."

■ So consented to, it became a law of the United States. (See, e.g., *Texas* v. *New Mexico* (1987) 482 U.S. 124, 128 [96 L.Ed.2d 105, 113-114, 107 S.Ct. 2279].) As such, it is "supreme," pursuant to article VI, clause 2 of the United States Constitution, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." It thereby renders without effect any such state provision that is in conflict. (See, e.g., *State of Pennsylvania* v. *The Wheeling &c. Bridge Co. et al.* (1852) 54 U.S. (13 How.) 518, 566 [14 L.Ed. 249, 269]; see generally, *Cipollone* v. *Liggett Group, Inc.* (1992) 505 U.S. 504, 516 [120 L.Ed.2d 407, 422-423, 112 S.Ct. 2608].)

■ Section 81 of the WMATA Compact, with which we are here concerned, bears the title, "Jurisdiction of Courts," and declares in its entirety: " 'The United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland and Virginia, of all actions brought by or against [WMATA] and to enforce subpoenas issued under [the WMATA Compact]. Any such action initiated in a State Court shall be removable to the appropriate United States District Court in the manner provided by Act of June 25, 1948, as amended (28 U.S.C. 1446).' " (Pub.L. No. 89-774 (Nov. 6, 1966) § 1, 80 Stat. 1350; accord, *id.*, § 4, 80 Stat. 1353.)

When we seek the meaning of section 81 of the WMATA Compact, as we must, in its words within their context (see, e.g., *Kopp* v. *Fair Pol. Practices*

*Com.* (1995) 11 Cal.4th 607, 672-673 [47 Cal.Rptr.2d 108, 905 P.2d 1248] (conc. opn. of Mosk, J.)), what we find is as follows.

First, by its title and according to its terms, section 81 of the WMATA Compact deals with the "jurisdiction" of courts over actions brought by or against WMATA, namely, the power to consider and decide such causes.[5]

Second, section 81 of the WMATA Compact specifies the "original" jurisdiction of WMATA actions, that is, the power to entertain causes of this sort in the first instance (*Brown* v. *Pitchess* (1975) 13 Cal.3d 518, 521 [119 Cal.Rptr. 204, 531 P.2d 772]). It appears to assume that the "appellate" jurisdiction of such actions, that is, the power to review their outcome, follows as otherwise provided.

Third, section 81 of the WMATA Compact expressly grants jurisdiction of WMATA actions to the courts of the United States—more precisely, it grants original jurisdiction specifically to the United States District Courts. Because WMATA was established by the WMATA Compact, actions involving the authority arise under the compact, at least ultimately. (Cf. *Osborn* v. *United States Bank* (1824) 22 U.S. (9 Wheat.) 738, 823 [6 L.Ed. at p. 204, 224] [to similar effect as to the second Bank of the United States, which was a federally chartered corporation]; *American Nat. Red Cross* v. *S.G.* (1992) 505 U.S. 247, 264-265 [120 L.Ed.2d 201, 217-218, 112 S.Ct. 2465] [to similar effect as to the American National Red Cross, another federally chartered corporation].) And because the compact is a federal law, such actions are within the power of the federal courts pursuant to article III, section 2, clause 1 of the United States Constitution. (Cf. *Osborn* v. *United States Bank, supra,* 22 U.S. (9 Wheat.) at p. 823 [6 L.Ed. at p. 224] [to similar effect as the federal charter of the second Bank of the United States]; *American Nat. Red Cross* v. *S.G., supra,* 505 U.S. at pp. 264-265 [120 L.Ed.2d at pp. 217-218] [to similar effect as to the federal charter of the American National Red Cross].)[6]

Fourth, section 81 of the WMATA Compact expressly grants jurisdiction of WMATA actions concurrently to the courts of Maryland and Virginia—

---

[5]What section 81 of the WMATA Compact speaks of as jurisdiction of an action corresponds to what California law refers to as "[j]urisdiction of the subject matter" (2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 10, p. 555; see, e.g., *Greener* v. *Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1035 [25 Cal.Rptr.2d 539, 863 P.2d 784]; *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715]).

[6]In *Qasim* v. *Washington Metro. Area Transit Auth.* (D.C.App. 1983) 455 A.2d 904, 906 (in bank) (hereafter sometimes *Qasim*), the District of Columbia Court of Appeals implied that WMATA actions are "local matters." The "locality," of course, is the District of Columbia, which is "the Seat of the Government of the United States" (U.S. Const., art. I, § 8, cl. 17), and neighboring parts of Maryland and Virginia—the "National Capital Region." (Pub.L. No. 89-774 (Nov. 6, 1966) preamble, 80 Stat. 1324.) We do not understand the *Qasim* court's

more precisely, it grants them original jurisdiction, albeit without further specification.[7] The WMATA Zone embraces territory belonging to these two states. As a result, it encompasses geographical area within which their courts may properly exercise judicial power—subject, of course, to the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution (see, e.g., *Shaffer* v. *Heitner* (1977) 433 U.S. 186, 189-212 [53 L.Ed.2d 683, 688-703, 97 S.Ct. 2569]).[8]

Fifth, and crucial, section 81 of the WMATA Compact impliedly denies jurisdiction of WMATA actions to the courts of states other than Maryland and Virginia—more precisely, it impliedly denies them original jurisdiction. It explicitly includes Maryland and Virginia courts. It thereby implicitly excludes the rest. *Expressio duorum, exclusio ceterorum.* The WMATA Zone does not embrace territory belonging to any of the other states. As a result, it does not encompass geographical area within which their courts could properly exercise judicial power.

Not to the contrary is the language of section 81 of the WMATA Compact itself: " 'The United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland and Virginia, of all actions brought by or against [WMATA] . . . . Any such action initiated in a State Court shall be removable to the appropriate United States District Court . . . .' " (Pub.L. No. 89-774 (Nov. 6, 1966) § 1, 80 Stat. 1350.) Read in context, the later phrase, "State Court," is a mere shorthand for the earlier one, "the

---

implication to amount to a denial that the WMATA Compact is a federal law. Such a denial would be erroneous.

[7]If it is parsed strictly, section 81 of the WMATA Compact expressly grants jurisdiction of WMATA actions to the courts of Maryland and Virginia and concurrently to the courts of the United States.

[8]That section 81 of the WMATA Compact does not expressly grant jurisdiction of WMATA actions concurrently to the local courts of the District of Columbia is not surprising. At the time the compact was consented to by Congress, it was the courts of the United States, and not the district's local courts, that functioned as "state" courts for the district. "[T]he local court system consisted of one appellate court and three trial courts, two of which . . . were courts of special jurisdiction. The third trial court . . . was one of quite limited jurisdiction . . . . The judgments of the appellate court . . . were subject to review by the United States Court of Appeals for the District of Columbia Circuit." (*Palmore* v. *United States* (1973) 411 U.S. 389, 392, fn. 2 [36 L.Ed.2d 342, 348-349, 93 S.Ct. 1670]; see generally, Pub.L. No. 88-241 (Dec. 23, 1963) 77 Stat. 478.) Subsequently, the district's local courts were reorganized to "succeed" the federal courts in their function as "state" courts for the district. (See *Palmore* v. *United States*, *supra*, 411 U.S. at pp. 407-409 [36 L.Ed.2d at pp. 357-358]; see generally, Pub.L. No. 91-358 (July 29, 1970) 84 Stat. 473, 475.)

We note in passing that the *Qasim* court held that section 81 of the WMATA Compact impliedly grants jurisdiction of WMATA actions concurrently to the District of Columbia's local courts as reorganized. (*Qasim* v. *Washington Metro. Area Transit Auth.*, *supra*, 455 A.2d at pp. 906-907.)

Courts of Maryland and Virginia." It cannot reasonably be taken to mean the courts *of the several states generally.*[9] To do so would obliterate the manifest distinction drawn between Maryland and Virginia, on the one side, and the other states, on the opposite. Neither can it reasonably be taken to mean the courts *of states other than Maryland and Virginia.* To do so would entail the conclusion that a WMATA action "initiated" in a court of Maryland or Virginia "shall *not* be removable to the appropriate United States District Court . . . ." Practical construction undermines such a position: WMATA actions initiated in Maryland or Virginia courts are in fact removed (see *Malone* v. *Washington Metro. Area Transit Auth.* (E.D.Va. 1985) 622 F.Supp. 1422, 1424).

Sixth, and final, section 81 of the WMATA Compact provides that a WMATA action initiated in a Maryland or Virginia court may be removed to the appropriate federal district court in accordance with section 1446 of title 28 of the United States Code, which specifies the procedures for removal (*City of Cincinnati, Ohio* v. *Weaver* (S.D.Ohio 1965) 245 F.Supp. 529, 532).

It follows from the forgoing that California courts do not have jurisdiction of WMATA actions. Section 81 of the WMATA Compact impliedly denies jurisdiction of such actions to the courts of states other than Maryland and Virginia. It thereby denies it to those of California.

Against this conclusion, Kingston argues that section 81 of the WMATA Compact does not in fact grant jurisdiction of WMATA actions only to the courts of the United States and to those of Maryland and Virginia. It urged this point vigorously in the superior court and the Court of Appeal, but has all but abandoned it here.

What remains is this: Under decisions such as *Yellow Freight System, Inc.* v. *Donnelly* (1990) 494 U.S. 820 [108 L.Ed.2d 834, 110 S.Ct. 1566] (hereafter sometimes *Yellow Freight System*), *Tafflin* v. *Levitt* (1990) 493 U.S. 455 [107 L.Ed.2d 887, 110 S.Ct. 792] (hereafter sometimes *Tafflin*), *Gulf Offshore Co.* v. *Mobil Oil Corp.* (1981) 453 U.S. 473 [69 L.Ed.2d 784, 101 S.Ct. 2870] (hereafter sometimes *Gulf Offshore Co.*), and *Dowd Box Co.* v. *Courtney* (1962) 368 U.S. 502 [7 L.Ed.2d 483, 82 S.Ct. 519] (hereafter sometimes *Dowd Box Co.*), there is a "presumption that state courts enjoy concurrent jurisdiction" with federal courts (*Gulf Offshore Co.* v. *Mobil Oil Corp.,* supra, 453 U.S. at p. 478 [69 L.Ed.2d at pp. 791-792]; accord, *Yellow*

---

[9]Being not at all similar to provisions such as section 1352 of title 28 of the United States Code, which declares that, subject to a limited exception, the United States "district courts shall have original jurisdiction, concurrent with *State courts,* of any action on a bond executed under any law of the United States . . . ." (Italics added.)

*Freight System, Inc.* v. *Donnelly, supra,* 494 U.S. at p. 823 [108 L.Ed.2d at pp. 839-840]; *Tafflin* v. *Levitt, supra,* 493 U.S. at p. 458 [107 L.Ed.2d at pp. 893-894]; see *Gulf Offshore Co.* v. *Mobil Oil Corp., supra,* 453 U.S. at pp. 477-478 [69 L.Ed.2d at pp. 790-792]; *Dowd Box Co.* v. *Courtney, supra,* 368 U.S. at pp. 507-508 [7 L.Ed.2d at pp. 486-488]).

Under *Yellow Freight System, Tafflin, Gulf Offshore Co.,* and *Dowd Box Co.,* there is indeed a "presumption of concurrent jurisdiction" between federal courts and state courts. (*Gulf Offshore Co.* v. *Mobil Oil Corp., supra,* 453 U.S. at p. 478 [69 L.Ed.2d at p. 791].) But that presumption arises *when the jurisdictional provision in question is silent as to the jurisdiction of state courts.* That is not the case here.

In *Yellow Freight System,* the jurisdictional provision is section 706(f) of title VII of the Civil Rights Act of 1964: "Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought" thereunder. (Pub.L. No. 88-352 (July 2, 1964) tit. VII, § 706(f), 78 Stat. 260-261; see *Yellow Freight System, Inc.* v. *Donnelly, supra,* 494 U.S. at p. 823 [108 L.Ed.2d at pp. 839-840].) There is not a word about state courts or their jurisdiction.

In *Tafflin,* the jurisdictional provision is section 1964(c) of title 18 of the United States Code, which is part of the Racketeer Influenced and Corrupt Organizations Act (RICO), as originally enacted: " 'Any person injured in his business or property by reason of a violation of [the act] may sue therefor in any appropriate United States district court . . . .' " (Pub.L. No. 91-452 (Oct. 14, 1970) tit. IX, 84 Stat. 944; see *Tafflin* v. *Levitt, supra,* 493 U.S. at p. 460 [107 L.Ed.2d at pp. 894-895].) Again, not a word about state courts or their jurisdiction.

In *Gulf Offshore Co.,* the jurisdictional provision is section 4(b) of the Outer Continental Shelf Lands Act of 1953: "The United States district courts shall have original jurisdiction of cases and controversies arising out of or in connection with any operations conducted on the outer Continental Shelf for [specified] purpose[s] . . . ." (Pub.L. No. 212, 83d Cong., 1st Sess. (Aug. 7, 1953) § 4(b), 67 Stat. 463; see *Gulf Offshore Co.* v. *Mobil Oil Corp., supra,* 453 U.S. at pp. 478-479 [69 L.Ed.2d at pp. 791-792].) Again, not a word about state courts or their jurisdiction.

In *Dowd Box Co.,* the jurisdictional provision is section 301(a) of the Labor Management Relations Act of 1947: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . , or between any such labor organizations,

may be brought in any district court of the United States having jurisdiction of the parties . . . ." (Pub.L. No. 101, 80th Cong., 1st Sess. (June 23, 1947) tit. III, § 301(a), 61 Stat. 156; see *Dowd Box Co.* v. *Courtney, supra,* 368 U.S. 502.) Again, not a word about state courts or their jurisdiction.

Here, the jurisdictional provision is section 81 of the WMATA Compact, which, it will be recalled, states in pertinent part that " '[t]he United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland and Virginia, of all actions brought by or against' " WMATA (Pub.L. No. 89-774 (Nov. 6, 1966) § 1, 80 Stat. 1350; accord, *id.,* § 4, 80 Stat. 1353). Its words are largely directed at state courts and their jurisdiction—to the express effect that the courts of Maryland and Virginia have jurisdiction of WMATA actions concurrently with courts of the United States, and to the implied effect that the courts of other states do not.[10]

Kingston then argues that, if section 81 of the WMATA Compact purports to grant jurisdiction of WMATA actions only to the courts of the United States and to those of Maryland and Virginia, it is violative of the United States Constitution and thereby void. It hardly raised this point in the superior court or the Court of Appeal, but urges it vigorously here.

We begin with the "heavy presumption" that section 81 of the WMATA Compact, like all other provisions of all other federal laws, does not violate the United States Constitution. (*Department of Labor* v. *Triplett* (1990) 494 U.S. 715, 721 [108 L.Ed.2d 701, 713-714, 110 S.Ct. 1428].) As will appear, we shall end with the conclusion that this presumption has not been rebutted.

Congress's power under article I, section 8, clause 17 of the United States Constitution "[t]o exercise exclusive Legislation in all Cases whatsoever, over" the District of Columbia as "the Seat of the Government of the United States," is broad indeed. It has been called "plenary." (*Palmore* v. *United States, supra,* 411 U.S. at p. 397 [36 L.Ed.2d at pp. 351-352].) And it has

---

[10]Kingston quotes our statement in *Brown* v. *Pitchess, supra,* 13 Cal.3d at page 521: "The phrase 'original jurisdiction' . . . does not mean exclusive jurisdiction." That is true. But it is of no benefit to its position. Our analysis does not assume the opposite.

In holding that section 81 of the WMATA Compact impliedly grants jurisdiction of WMATA actions concurrently to the District of Columbia's local courts as reorganized (see fn. 8, *ante*), the *Qasim* court relied on the "presumption of concurrent jurisdiction" (*Gulf Offshore Co.* v. *Mobil Oil Corp., supra,* 453 U.S. at p. 478 [69 L.Ed.2d at pp. 791-792]) between federal courts and state courts. (*Qasim* v. *Washington Metro. Area Transit Auth., supra,* 455 A.2d at p. 907.) We must reject the soundness of its reliance. But we need not pass on the correctness of its holding. One may justify its conclusion on the ground, not available to the courts of any of the states, that the district's local courts as reorganized "succeeded" the federal courts in their function as "state" courts for the district.

been held to extend even "outside of" the district's "territorial limits." (*National Ins. Co.* v. *Tidewater Co.* (1949) 337 U.S. 582, 600 [93 L.Ed. 1556, 1572, 69 S.Ct. 1173].) The reason is plain. It belongs to Congress "not [as] a local legislature, but . . . , in its high character, as the legislature of the Union." (*Cohens* v. *Virginia* (1821) 19 U.S. (6 Wheat.) 264, 429 [5 L.Ed. 257, 297.)

Similarly broad is Congress's power under article I, section 8, clause 3 of the United States Constitution "[t]o regulate Commerce . . . among the several States . . . ." It too has been called "plenary." (*Hodel* v. *Virginia Surface Mining & Recl. Assn.* (1981) 452 U.S. 264, 276 [69 L.Ed.2d 1, 15-16, 101 S.Ct. 2352].) It is "complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, o[t]her than are prescribed in the constitution." (*Gibbons* v. *Ogden* (1824) 22 U.S. (9 Wheat.) 1, 196 [6 L.Ed. 23, 70].)

Whatever breadth may be lacking in its seat-of-government and commerce powers is supplied to Congress through its power under article I, section 8, clause 18 of the United States Constitution "[t]o make all Laws which shall be necessary and proper for carrying [its other powers] into Execution . . . ." This teaching is old. (See *McCulloch* v. *Maryland* (1819) 17 U.S. (4 Wheat.) 316, 400-425 [4 L.Ed. 579, 600-606].) It remains vital today.

After consideration, we believe that section 81 of the WMATA Compact falls comfortably within Congress's seat-of-government and commerce powers, whether each is considered separately or both together, either with the necessary-and-proper power or without.

Section 81 of the WMATA Compact grants jurisdiction of WMATA actions to the courts of the United States. It is not problematic in this regard. As explained, because WMATA was established by the WMATA Compact, actions involving the authority arise under the compact, at least ultimately; and because the compact is a federal law, such actions are within the power of the federal courts. The WMATA Zone includes the District of Columbia as the seat of government. By embracing as well territory belonging to Maryland and Virginia, it comprehends the commerce flowing between and among the district and these two states.

Section 81 of the WMATA Compact also grants jurisdiction of WMATA actions concurrently to the courts of Maryland and Virginia. Neither is it problematic in this regard. It could surely have denied jurisdiction of such actions to the courts of the several states generally. (See, e.g., *The Moses Taylor* (1867) 71 U.S. (4 Wall.) 411, 428-430 [18 L.Ed. 397, 401-402].) That

it excepted the courts of these two states causes no offense: The WMATA Zone embraces territory belonging to them alone.

Kingston's attack on section 81 of the WMATA Compact under the United States Constitution is essentially three pronged. The first part effectively challenges the compact in general as an unconstitutional agreement among states, including the District of Columbia as a "state" along with Maryland and Virginia. It fails. As explained, the compact was initiated and consummated by Congress for federal purposes. As also explained, on its face and in its substance, it is a federal law. Whether it is *permitted* is material—it is—not whether it is *required*. (See *Cuyler* v. *Adams* (1981) 449 U.S. 433, 440 [66 L.Ed.2d 641, 648-649, 101 S.Ct. 703].) The second part of the attack also effectively challenges the compact in general, this time as a federal law that is beyond Congress's powers. It too fails. As explained, the compact falls comfortably within such powers. The third part of the attack effectively challenges section 81 itself as invidiously discriminatory in favor of Maryland and Virginia and against the other states, apparently in violation the Fifth Amendment's due process clause. It fails as well. Any discrimination effected by section 81 seems hardly invidious: the WMATA Zone embraces territory belonging to Maryland and Virginia, and does not embrace territory belonging to any other state. In consenting to the compact, Congress effectively declared its view that section 81 was not invidiously discriminatory. Included therein were senators and representatives from Maryland and Virginia. Included also, and in overwhelming numbers, were their counterparts from the other states. If these did not discern invidious discrimination in section 81—and they apparently did not: they expressed no recorded opposition—we have no basis to do otherwise.[11]

### III

Having determined that California courts do not have jurisdiction of actions brought by or against WMATA, we must, and do, conclude that the

---

[11]To the extent that Kingston's claim that section 81 of the WMATA Compact is invidiously discriminatory is based on its asserted uniqueness in granting jurisdiction of actions to the courts of some states but not all, it collapses under its own weight. A similar provision is near at hand. Article VI(b) of the Tahoe Regional Planning Compact declares in pertinent part: "The appropriate courts of" California and Nevada, "each within its limits of territory and subject matter provided by state law, are vested with jurisdiction over . . . actions to which" the Tahoe Regional Planning Agency " 'is a party . . . . Each such action shall be brought in a court of the state . . . where the property affected by [the] action is situated, unless the action is brought in a federal court.' " (Pub.L. No. 91-148 (Dec. 18, 1969) 83 Stat. 360, 367.)

To the extent that Kingston's claim against section 81 of the WMATA Compact extends to violation of such provisions of the United States Constitution as article III and the Tenth Amendment, it must be rejected out of hand as insubstantial.

Court of Appeal was right to hold that the superior court did not have jurisdiction of No. BC056254 when it vacated the judgment therein as void.

In arguing to the contrary, Kingston asserts that section 81 of the WMATA Compact does not in fact grant jurisdiction of WMATA actions only to the courts of the United States and to those of Maryland and Virginia. We addressed the point above, and found it wanting.

Kingston then asserts that, if section 81 of the WMATA Compact purports to grant jurisdiction of WMATA actions only to the courts of the United States and to those of Maryland and Virginia, it is violative of the United States Constitution and thereby void. We addressed this point too, and found it wanting as well.

Kingston finally asserts that, even if section 81 of the WMATA Compact does in fact grant jurisdiction of WMATA actions only to the courts of the United States and to those of Maryland and Virginia, as a matter of California law WMATA waived any challenge it might have had to the superior court's jurisdiction. Whether such an outcome would be countenanced by the supremacy clause is a question we need not reach. The fact is, it is *not* the outcome here. ■ Under California law, a party simply cannot waive such a challenge. (*DeTomaso* v. *Pan American World Airways, Inc.* (1987) 43 Cal.3d 517, 520, fn. 1 [235 Cal.Rptr. 292, 733 P.2d 614].)[12]

## IV

For the reasons stated above, we conclude that we must affirm the judgment of the Court of Appeal.

It is so ordered.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

---

[12]Kingston complains that WMATA should have removed No. BC056254 from the superior court to the appropriate United States District Court. Any such removal would have been to no avail. Kingston assumes that the federal district court would have acquired jurisdiction of the action from the superior court. Not so. "[I]t is well settled that" when, as here, "the state court lacks jurisdiction . . . , the federal court acquires none upon removal, even though the federal court would have had jurisdiction if the suit had originated there." (*Arizona* v. *Manypenny* (1981) 451 U.S. 232, 242, fn. 17 [68 L.Ed.2d 58, 69, 101 S.Ct. 1657].)